UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ALAN LYLE HOWE, JR.<br>    Plaintiff,<br><br>       v.<br><br>SYLVIA BURWELL, in her official capacity as Secretary of the United States Department of Health and Human Services; THOMAS PEREZ, in his official capacity as Secretary of the United States Department of Labor; JACOB J. LEW, in his official capacity as Secretary of the United States Department of the Treasury; KATHERINE ARCHULETA, in her official capacity as Director of the Office of Personnel Management; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF LABOR; UNITED STATES DEPARTMENT OF THE TREASURY; and OFFICE OF PERSONNEL MANAGEMENT; VERMONT HEALTH CONNECT; DEPARTMENT OF VERMONT HEALTH ACCESS; and STEVEN M. COSTANTINO, in his official capacity as Commissioner of Vermont Health Access,<br>    Defendants. | Civil No. 2:15-cv-6 |

**VERMONT DEFENDANTS' MOTION TO DISMISS WITH INCORPORATED
MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND AND COMPLAINT ALLEGATIONS ..........................................1

I.      The ACA, Abortion Coverage, and Allocation Accounts....................................1

II.     Mr. Howe's Allegations ....................................................................................2

III.    Mr. Howe's Claims ..........................................................................................3

ARGUMENT      ...........................................................................................................4

I.      Motion to Dismiss Standard .............................................................................5

II.     Mr. Howe's Claims Against DVHA and Vermont Health Connect are Barred by
        Sovereign Immunity...........................................................................................6

III.    The Vermont Constitution Claim is Barred by Sovereign Immunity ..................7

IV.     Mr. Howe Cannot State a RFRA Claim Against the Vermont Defendants .........8

V.      Mr. Howe's First Amendment Claims Against the Commissioner Must be Dismissed
        for Failure to State a Claim and Lack of Standing ............................................9

        A.    Mr. Howe Has Not Plausibly Alleged a First Amendment Claim Against the
              Commissioner.........................................................................................10

              1.    Free Exercise ...............................................................................10

              2.    Free Speech ..................................................................................13

        B.    Mr. Howe Has Not Adequately Alleged an Ex parte Young Claim Against the
              Commissioner Because His Allegations Are Directed at Federal Laws Enforced
              by Federal Agencies ...............................................................................15

        C.    Mr. Howe Lacks Standing to Sue the Commissioner Because the Court Cannot
              Enter Relief Against the Commissioner That Would Redress Any Alleged Injury...22

CONCLUSION ...........................................................................................................25

Defendants Vermont Health Connect, Department of Vermont Health Access, and Commissioner Steven M. Constantino, by and through their undersigned counsel, hereby move to dismiss this action pursuant the Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support, Vermont Defendants submit the following incorporated Memorandum of Law.

## MEMORANDUM OF LAW

Plaintiff Alan Howe's claims against the Vermont Defendants should be dismissed for lack of jurisdiction and failure to state a claim. Howe principally seeks relief under the federal Religious Freedom Restoration Act (RFRA) but he cannot obtain relief against a state official under that statute. Nor may he pursue his claims against state agencies, or seek relief under the Vermont Constitution. The only potential claim that Howe has against a state official is his *Ex parte Young* claim against the Commissioner, in his official capacity, asserting a violation of the First Amendment. But that claim lacks merit, because Howe's allegations do not support a First Amendment violation, and because Howe's claims are directed at federal laws, not the state laws enforced by the Commissioner.

### FACTUAL BACKGROUND AND COMPLAINT ALLEGATIONS

**I.      The ACA, Abortion Coverage, and Allocation Accounts**

Howe's complaint challenges certain aspects of the federal Affordable Care Act (ACA) and its implementing regulations that relate to insurance coverage for abortion. The ACA neither requires private insurers to provide coverage for abortion, nor bars them from doing so. 42 U.S.C. § 18023(b)(1); 45 C.F.R. § 156.280(c). Insurers may not, however, use federal premium credits or subsidies for abortions other than those abortions for which federal funds may be used. 42 U.S.C. § 18023(b)(2). To ensure that federal funds are not used for this purpose, an insurer

1

must maintain a separation allocation account and pay for abortion services out of that account. The insurer funds the account with a small portion of each insured's premium – by law, at least $1 per month. *Id.* § 18023(b)(2)(B)-(D); 45 C.F.R. § 156.280(e).

The complaint is not directed at and does not cite any state laws or regulations.

## II.   Mr. Howe's Allegations

In reviewing a motion to dismiss for failure to state a claim, the Court accepts as true the well-pled factual allegations in the Complaint. Here, as the Court is aware, the Vermont Defendants dispute some of Howe's allegations, and submitted relevant evidence as part of Defendants' opposition to Howe's motion for a preliminary injunction. Solely for purposes of its arguments under Rule 12(b)(6), however, the State does not contest the well-pled factual allegations in the complaint.

Howe is a Vermont resident. In March 2014, he enrolled in a health insurance plan through Vermont's health care exchange, called Vermont Health Connect. He received premium subsidies for this coverage given his income level. Howe alleges that in November 2014, he learned that his plan covered abortion and that a "portion of his premium" was being placed in the segregated accounts required by the ACA.  Compl. ¶ 26. Howe "is a Christian and believes in the sanctity of human life from the point of conception." *Id.*  ¶ 19.  In December 2014, he contacted Vermont Health Connect and advised that he "strongly object[s] to being forced into any plan that requires me to pay for the destruction of innocent human life." *Id.* ¶ 30. The current status of Howe's insurance coverage is not clear from the complaint, but he alleges that he is not paying premiums for his plan.  *Id.* ¶¶ 29, 47.

Howe seeks to continue or obtain health insurance through Vermont Health Connect and to obtain the "substantial subsidies" for that coverage available through the ACA.  *Id.* ¶ 48. All

of the plans offered through Health Connect provide coverage for abortion, and the insurers are thus required to allocate a portion of each insured's premium into a separate account that is used to pay for abortion services that may not be paid for with federal funds. *Id.* ¶ 26. Howe objects on religious grounds to having a portion of his premium deposited by an insurer into this separate account required by federal law. *Id.* ¶¶ 19, 26.

## III.    Mr. Howe's Claims

All of Howe's claims are directed at provisions of federal law. First, he seeks declaratory and injunctive relief directed at the ACA's individual mandate. *Id.* 23 ¶¶ 1-3, 5; *see also id.* ¶¶ 41, 45-46. Vermont law does not require Howe to obtain insurance or penalize him for failing to do so.

Second, Howe seeks declaratory relief directed at parts of the ACA (and implementing regulations) that require the separate allocation accounts. *Id.* 23 ¶¶ 1-3. These accounts ensure that federal subsidies are not used to pay for those abortions for which the expenditure of federal funds is not permitted. 42 U.S.C. § 18023(b)(2). While Vermont has generally required health insurers to comply with the ACA, Vt. Stat. Ann. tit. 8 § 4062c (2009), the allocation requirement is created by federal law, not state law. The ACA contemplates some role for state health insurance commissioners to ensure compliance with this allocation fund requirement, *see* 42 U.S.C. § 18023(b)(2)(E), but the implementing rule only requires insurers to provide plans and reports to state commissioners that detail their self-compliance efforts and places no affirmative enforcement obligation upon state officials. *See* 42 C.F.R. § 156.280(e)(5).

Third, Howe seeks relief directed at the Federal Defendants barring them from withholding federal subsidies if he refuses to pay what he calls the "separate abortion fee." Compl. 23 ¶ 6. The availability of federal subsidies is a matter of federal law.

Fourth, Howe seeks declaratory and injunctive relief directed at parts of the ACA (and implementing regulations) related to information provided by insurers regarding abortion coverage. *Id.* 23 ¶¶ 4, 7. These are, again, federal laws and regulations; no provisions of Vermont law are cited or relevant.

Howe asserts four claims in support of these requests for relief. His first claim is for an alleged violation of the Religious Freedom Restoration Act (RFRA) and is expressly directed only at the Federal Defendants. *Cf. City of Boerne v. Flores,* 521 U.S. 507, 532-36 (1997) (holding that RFRA, as applied to the states, exceeded Congress's powers under Section 5 of the Fourteenth Amendment). Howe's second count asserts that the Vermont Defendants have violated the Vermont Constitution. The only law cited, however, is the ACA– a federal statute. Compl. ¶¶ 84-88. Howe's last two claims are brought under the free speech and free exercise clauses of the First Amendment. Again, the only laws challenged in these counts are the federal ACA and its implementing regulations. *Id.* ¶¶ 95-103, 108.

## ARGUMENT

Plaintiff's claims against the Vermont Defendants are misplaced. His claims against state agencies are barred by sovereign immunity and he cannot press his Vermont Constitution claim in federal court. And plaintiff has failed to adequately allege standing or state a plausible claim for relief against the Commissioner for several reasons: (1) he cannot bring a RFRA claim against the Commissioner and has not plausibly alleged a First Amendment violation; (2) his claims are directed at federal laws, not state laws, and he has not plausibly alleged that the Commissioner enforces these laws; and (3) plaintiff has not shown that relief entered against the Commissioner would redress any alleged injury.

4

## I.     Motion to Dismiss Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A district court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff in assessing the adequacy of the complaint. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011).  However, this presumption of truth "is inapplicable to legal conclusions," and the court should not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions'" (citation omitted)).

Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Lakhani v. U.S. Citizenship & Immigration Servs.*, No. 2:12-CV-95, 2013 WL 3829624, at *2 (D. Vt. July 23, 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "Determining subject matter jurisdiction is a 'threshold inquiry,' and should be addressed prior to any consideration of the Complaint's substantive merits." *Grundstein v. Vermont*, No. 1:11-CV-134, 2011 WL 6291955, at *2 (D. Vt. Dec. 15, 2011) (citation omitted).

"A court deciding such a motion must accept as true all material factual allegations in the complaint." *Wolffing v. McLaughlin*, No. 1:12-CV-189, 2013 WL 1702638, at *2 (D. Vt. Apr. 19, 2013). However, "a plaintiff asserting subject-matter jurisdiction bears the burden of proving its existence by a preponderance of the evidence." *Id.* "Furthermore, because jurisdiction must be shown affirmatively, courts do not draw inferences from the pleadings in favor of the petitioner." *Lakhani*, 2013 WL 3829624, at *2. "In reviewing subject matter jurisdiction, the Court may look to matters beyond the pleadings." *Id.*; *see also Kerin v. Vt. Judicial Bureau*, No. 2:06-CV-244, 2007 WL 1169173, at *2 (D. Vt. Apr. 19, 2007) ("[T]he court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question.").

## II. Mr. Howe's Claims Against DVHA and Vermont Health Connect are Barred by Sovereign Immunity.

"The Eleventh Amendment precludes [a party] from bringing suit against the state or state agencies, because it deprives the federal courts of subject matter jurisdiction over any action asserted by an individual against a state regardless of the nature of the relief sought." *Madden v. Vt. Supreme Court*, 236 F. App'x 717, 717 (2d Cir. 2007); *see also Davis v. Vt. Dep't*

*of Corrs.*, 868 F. Supp. 2d 313, 322 (D. Vt. 2012) ("The Eleventh Amendment bars a private suit against a state and entities considered arms of the state unless the state unequivocally consents to being sued or Congress 'unequivocally express[es] its intent' to abrogate the state's sovereign immunity." (citation omitted)). "Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment." *Collette v. Vermont*, No. 1:09-CV-04, 2010 WL 186173, at *2 (D. Vt. Jan. 13, 2010) (citing Vt. Stat. Ann. tit. 12 § 5601(g) (2002)).

Department of Vermont Health Access ("DVHA") is a department within the Vermont Agency of Human Services. *See* Vt. Stat. Ann. tit. 3 §§ 212(24), 3088 (2010); *see also* Compl. ¶ 15. Vermont Health Connect, formally known as the Vermont Health Benefit Exchange, is administered by DVHA as a division within DVHA. *See* Vt. Stat. Ann. tit. 33 § 1803(a) (2014). As arms of the State of Vermont, Defendants DVHA and Vermont Health Connect are immune from suit in this Court under the Eleventh Amendment. Accordingly, all of plaintiff's claims against DVHA and Vermont Health Connect must be dismissed for lack of jurisdiction.

**III.     The Vermont Constitution Claim is Barred by Sovereign Immunity**

Plaintiff asserts that the Vermont Defendants are engaged in ongoing violations of his religious freedom rights under Chapter I, Article III of the Vermont Constitution.  *See* Compl.  ¶¶ 81-92.  However, sovereign immunity bars this state-law claim. "[T]he Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) . . . made clear that the Eleventh Amendment prevents a federal court from granting injunctive relief against a state official on the basis of state law. Thus, if a federal court were to construe state law in favor of a plaintiff challenging the application of state law, the court could not enforce that judgment by issuing an injunction." *Fleet Bank, Nat'l Ass'n v. Burke*, 160 F.3d 883, 891 (2d Cir. 1998).

This Court has likewise recognized that suits against state officers under the *Ex parte Young* exception to Eleventh Amendment immunity "can only seek prospective injunctive or declaratory relief for violations of federal law." *Davis v. Pallito*, No. 5:10-CV-154, 2011 WL 4443026, *6 (D. Vt. June 16, 2011) (citing *Pennhurst* and *Edelman v. Jordan*, 415 U.S. 651 (1974)). As the *Pennhurst* Court explained, having "a federal court instructs state officials on how to conform their conduct to state law" is a result that "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. Therefore, when a plaintiff asserts claims against a Vermont state official in his official capacity for alleged deprivations of rights guaranteed by the Vermont Constitution, "the Eleventh Amendment bars federal court jurisdiction over these state-law claims." *Robinson v. Jarris*, No. 1:07-CV-265, 2008 WL 3979260, at *3 (D. Vt. Aug. 25, 2008) (citing *Pennhurst* and dismissing plaintiffs' claims against state officials for alleged violations of their rights under multiple articles of the Vermont Constitution). Count II must be dismissed.

## IV.     Mr. Howe Cannot State a RFRA Claim Against the Vermont Defendants

Although plaintiff limits his RFRA claim to "the Federal Defendants," Compl. ¶¶ 73-80, to the extent that plaintiff does seek injunctive or declaratory relief under RFRA against the Commissioner, DVHA or Vermont Health Connect, such claim fails as a matter of law. "In *City of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court held the RFRA unconstitutional as applied to state and local governments because it exceeded Congress's authority under § 5 of the Fourteenth Amendment," *Roman Catholic Archdiocese of N.Y. v. Sebelius*, 987 F. Supp. 2d 232, 244 (E.D.N.Y. 2013), since "Congress was not 'enforcing' the provisions of the Fourteenth Amendment, but attempting to determine what constitutes a constitutional violation." *Ungar v. N.Y.C. Housing Auth.*, No. 06 Civ.1968, 2009 WL 125236, at *12 (S.D.N.Y. Jan. 14, 2009), *aff'd*, 363 F. App'x 53 (2d Cir. 2010). "In 2000, RFRA was

amended to delete all references to state and local governments." *Gambino v. Payne*, No. 1:12-CV-0824, 2013 WL 6092506, at *5 n.7 (W.D.N.Y. Nov. 18, 2013).[1]

RFRA claims against state officials are also barred. *See Ashby v. Arnone*, No. 3:13-CV-223, 2013 WL 1798905, at *2 (D. Conn. Apr. 26, 2013) (observing that RFRA is "unconstitutional as applied to state and local governments" and "[t]he defendants are all state employees. Accordingly, any RFRA claim is dismissed"); *see also Sutton v. Rasheed*, 323 F.3d 236, 244 n.12 (3d Cir. 2003) ("[A]s applied to the states and hence to state officials, RFRA exceeds congressional power."). The 2000 amendments to RFRA expressly removed any basis for liability by state officials. *See Ungar*, 2009 WL 125236, at *12-13.

## V. Mr. Howe's First Amendment Claims Against the Commissioner Must be Dismissed for Failure to State a Claim and Lack of Standing

The only potential claim that plaintiff has against a state defendant is an *Ex parte Young* claim against the DVHA Commissioner. In general, state officials may be sued in their official capacities, notwithstanding the Eleventh Amendment, for prospective injunctive or declaratory relief to prevent a continuing or imminent violation of federal law. *See Papazoni v. Vermont*, No. 5:12-CV-1, slip op. at 7 (D. Vt. May 9, 2013) ("[i]n *Ex Parte Young*, 209 U.S. 123, 155-56 (1908), the U.S. Supreme Court 'held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law.'" (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). For this claim to withstand dismissal, plaintiff's allegations must:

1. plausibly allege a *First Amendment* violation, because, as explained above, RFRA does not apply to states or state officials;

---

[1] Both the Second Circuit and this Court have indicated that RFRA is inapplicable to any action taken under authority of state law. *See Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008) ("RFRA does not apply to state law"); *Browne v. United States*, 22 F. Supp. 2d 309, 312 (D. Vt. 1998) ("[T]he Supreme Court held RFRA unconstitutional as applied to state law"), *aff'd*, 176 F.3d 25 (2d Cir. 1999).

2. be directed at statutes or rules that the Commissioner enforces, not at federal laws enforced by federal agencies;

3. plausibly show that plaintiff has standing to sue the Commissioner, including that any alleged injury is traceable to the Commissioner and may be redressed with relief directed at the Commissioner.

Plaintiff's complaint satisfies none of these requirements.

**A.      Mr. Howe Has Not Plausibly Alleged a First Amendment Claim Against the Commissioner.**

 Howe asserts two First Amendment claims, one under the Free Exercise Clause and the other under the Free Speech Clause. He has not, however, plausibly alleged either claim against the Commissioner.

**1.      Free Exercise**

Howe's free-exercise claim against the Commissioner does not survive scrutiny under Rule 12(b)(6), for at least two reasons.

First, Howe's allegations do not satisfy the constitutional standard for a free-exercise claim. The "right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990) (quotation omitted). The First Amendment standard is a demanding one, and Howe has not offered any allegations that would support a First Amendment violation.  His complaint does not challenge any Vermont statutes or regulations and offers only general, conclusory allegations about the Commissioner's role in administering Vermont Health Connect. Indeed, Howe repeatedly – including in Count III, the free-exercise count – refers collectively to

"defendants," grouping the Commissioner with the Federal Defendants and not specifying any action taken by the Commissioner.

The Supreme Court's decision in *Smith* controls here and requires dismissal of the free-exercise claim against the Commissioner. Howe's complaint and filings evidence his desire to purchase insurance coverage through Vermont Health Connect that does not provide coverage for abortion. *See, e.g.*, Compl. ¶¶ 26-31, 51, 63; Doc. 35, at 13. In his reply brief in support of his motion for a preliminary injunction, Howe contended that the Commissioner is a "proper party" because the Commissioner approves plans for the exchange and enforces state laws that require individual plans to be offered on the exchange. Doc. 35, at 7-8. Howe also raised, for the first time, Vermont Premium Assistance, a state subsidy administered by Vermont Health Connect. Doc. 35, at 8.[2] Howe has not shown, however, that Vermont Health Connect is anything other than a generally applicable regulatory program. Howe has no First Amendment right to access coverage on Vermont Health Connect that accords with his religious beliefs. The healthcare marketplace offers insurance coverage on certain terms. It does not "regulate religious beliefs, the communication of religious beliefs, or the raising of one's children in those beliefs." *Smith,* 494 U.S. at 882. If the health insurance marketplace offered through Vermont Health Connect is a law at all, it is a "neutral, generally applicable regulatory law," *id.* at 880, that raises no First Amendment concerns. Under Vermont law, Howe may purchase insurance from the plans offered on the exchange, or not. Consistent with *Smith*, however, he has no free-exercise right to a special exemption or accommodation.

---

[2] As the State argued at the hearing on plaintiff's request for a preliminary injunction, this brief discussion of state subsidies in a reply memorandum is not sufficient to assert a claim in that regard. The complaint, which is controlling, asserts a single request for relief relating to subsidies, and that request is expressly limited to the Federal Defendants. Compl. 23 ¶ 6 ("Enter preliminary and permanent injunctive relief prohibiting Federal Defendants from withholding subsidies for health plans otherwise available to Plaintiff on the basis that Plaintiff will not pay the separate abortion fee."). The State does not concede Plaintiff has stated any claim with respect to his eligibility for state subsidies.

In his preliminary injunction briefing, Howe asserted that the *Smith* standard does not apply here because, in his view, the ACA's individual mandate is not "neutral and generally applicable." Doc. 2-1, at 11. In support of this argument, Howe points to provisions of federal law that allow for certain exemptions from the individual mandate. *See id.* 11-14. The individual mandate is federal, not state, law. 26 U.S.C. § 5000A. A person who does not comply with the mandate pays a federal tax. *Id.* The IRS, not the Commissioner, is responsible for collecting federal taxes. *See id.* § 5000A(b)(2) ("Any penalty imposed by this section with respect to any month shall be included with a taxpayer's return . . . .").[3] Howe's own complaint acknowledges that the Federal Defendants enforce the mandate; his request for injunctive relief directed at the mandate is expressly limited to the "Federal Defendants." Compl. 23 ¶ 5. Even if Howe's arguments regarding the mandate have merit – a point the Vermont Defendants do not address or concede – at most that would support exempting Howe from federal penalties for not obtaining insurance. Howe's arguments regarding the mandate and available exemptions are not relevant to any First Amendment claim against the Commissioner.

Howe also asserts in the preliminary injunction briefing that the *Smith* standard does not apply because exchanges in other states offer plans that do not provide abortion coverage. Doc. 35, at 24. The Commissioner has no responsibility for exchanges in other states. A state's law is no less neutral and generally applicable merely because other states have different laws.

---

[3] Plaintiff relies substantially on the fact that the state exchanges certify eligibility for certain exemptions. This point is addressed further below. *See infra* pp. 18-19. The fact that the state exchanges provide information to the IRS about persons that meet federally defined exemption standards does not mean that the exchanges enforce the mandate. Enforcement authority rests with the IRS. *See, e.g.,* IRS Form 8965, Health Coverage Exemptions, *available at http://www.irs.gov/pub/irs-access/f8965_accessible.pdf* . Moreover, IRS guidance confirms that only some exemptions must be requested through an exchange; some may only be claimed on the person's tax return and others may be requested through an exchange or claimed on the return. *See* IRS, Questions and Answers on the Individual Shared Responsibility Provision, Question 21, available at: http://www.irs.gov/Affordable-Care-Act/Individuals-and-Families/Questions-and-Answers-on-the-Individual-Shared-Responsibility-Provision#Exemptions

Second, to the extent Howe claims that he should be able to purchase an insurance plan that does not provide coverage for abortion, Howe has not shown state action sufficient to make out a First Amendment free exercise claim. "To prevail on his Free Exercise claim, [the plaintiff] must first show that a state action sufficiently burdened his exercise of religion." *Genas v. N.Y. Dep't of Corr. Servs.*, 75 F.3d 825, 831 (2d Cir. 1996); *cf. Hudgens v. NLRB*, 424 U.S. 507 (1976) ("First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on State action" (quotation omitted)). The plans offered on Vermont Health Connect are offered by private insurers. The ACA expressly provides that nothing in the Act requires insurers to provide coverage for abortion services. 42 U.S.C. § 18023(b)(1). The scope of coverage in the plans available on Vermont Health Connect thus reflects decisions made by private insurers.

The fact that Vermont Health Connect approves plans for the exchange is not sufficient state action to support a First Amendment claim. Howe has not alleged that the Commissioner refused to approve plans that do not cover abortion, or otherwise blocked insurers from offering such plans. He does not point to any state law or regulation that requires insurers to provide abortion coverage. Again, the ACA makes coverage for abortion services voluntary for insurers. 42 U.S.C. § 18023(b)(1); 45 C.F.R. § 156.280(c). The Commissioner may not be held liable for the business decisions made by private actors.

## 2. Free Speech

Howe's free-speech claims fails as well. Howe does not argue that his own speech was restricted in any way, but alleges that insurance companies have been prohibited from providing information about abortion coverage. Compl. ¶¶ 108-111. Howe has not plausibly alleged that

the Commissioner has violated the free-speech clause of the First Amendment, nor has he adequately alleged that he has standing to assert this claim.

First, while Howe alleges that "[d]efendants expressly forbid" insurers from providing certain information, Compl. ¶ 108, he cites no Vermont law or regulation that imposes any such restriction on insurers. He points only to a federal regulation, 45 C.F.R. § 156.280(f), as support for this claim. Even if Howe were correct in his reading of § 156.280(f) as restricting speech, he has not shown, nor could he, that the Commissioner imposes or enforces these restrictions.

Second, Howe's claim is based on a mis-reading of the regulation and thus fails as a matter of law. Howe construes the regulation as forbidding insurers from providing any information about abortion coverage before enrollment, and as forbidding insurers from providing information about the segregated accounts required by federal law. But on its face the regulation does not ban any speech. Rather, it requires certain notices and information: (1) insurers must provide a certain notice to enrollees at the time of enrollment and "only as part of the summary of benefits and coverage explanation," 45 C.F.R. § 156.280(f)(1); and (2) those notices and other information "must provide information only with respect to the total amount of the combined payments for services described in paragraph (d)(1) of this section and other services covered by the QHP," 45 C.F.R. § 156.280(f)(2). Howe reads this language, presumably because the term "only" is used, as banning any disclosures of information other than the required ones. That is neither a natural nor logical reading, however. Howe provides no explanation for why the federal government would seek to ban insurers from providing information about the services covered by their plans. And his interpretation of (f)(1) as forbidding insurers from advertising or otherwise providing information about abortion coverage conflicts with (f)(2), which expressly refers to advertising and information provided by the

insurer. The most reasonable reading of § 156.280(f) is that it mandates the provision of certain minimum information no later than enrollment – that is, the only required notice about coverage for abortion is at the time of enrollment, and the only payment information that "must" be disclosed is the total payment. *See id.* Nothing in the plain wording of § 156.280(f) bars insurers from providing additional information to their insureds prior to enrollment.

Third, Howe's allegations are inadequate to demonstrate that he has standing to pursue a claim based on the free-speech rights of insurers. "The success of a third-party recipient's First Amendment claim is 'entirely derivative' of the First Amendment right of the speaker subject to the challenged regulation." *Price v. Saugerties Cent. Sch. Dist.*, 305 F. App'x 715, 716 (2d Cir. 2009) (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83-84 (2d Cir. 2003)). As the Third Circuit has explained, "in order to maintain a 'right to listen' claim, a plaintiff must clearly establish the existence of a 'willing speaker.' In the absence of a willing speaker, 'an Article III court must dismiss the action for lack of standing.'" *Pa. Family Institute, Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007) (quoting *Competitive Enter. Inst. v. U.S. Dep't of Transp.*, 856 F.2d 1563, 1566 (D.C. Cir.1988)). Thus, to adequately allege standing on this claim, Howe must show that the rights of a "willing speaker" have been infringed. *Id.*; *accord Price*, 305 F. App'x at 716.

The complaint does not identify any insurer that wants to provide information, but has refrained from doing so because of the federal regulations challenged by Howe. Conclusory allegations "on information and belief," Compl. ¶¶ 57, 109, are inadequate to satisfy the burden of "demonstrat[ing] a specific and particularized injury in fact." *Price*, 305 Fed. App'x at 716.

**B.      Plaintiff Has Not Adequately Alleged an *Ex parte Young* Claim Against the Commissioner Because His Allegations are Directed at Federal Laws Enforced by Federal Agencies**

Even if Howe had adequately alleged a First Amendment violation – and he has not – his claim still fails, because his complaint is directed at federal laws enforced by federal agencies. *Ex parte Young* requires that "the state officer against whom a suit is brought must have some connection with the enforcement of the act that is in continued violation of federal law." *Papazoni*, slip op. at 8 (quotation omitted) (holding that "there is no basis for applying the *Ex Parte Young* exception to Eleventh Amendment immunity" since "[i]n this case, there is no allegation that Governor Shumlin is connected to any alleged violation"). Otherwise, a plaintiff "is merely making [the state official] a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

"[C]ourts have not read *Ex parte Young* expansively." *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd*, 448 F. App'x 79 (2d Cir. 2011). "For a state officer to be a proper party, both a 'particular duty to enforce the statute in question' and a 'demonstrated willingness to exercise that duty' are needed. The state officer's 'connection' to the enforcement of the statute must meet both of these prongs." *Id.* (quoting *Ex parte Young*, 209 U.S. at 161 and *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001)). Accordingly, to obtain injunctive or declaratory relief against a state official, "[t]he individual sued must have a direct connection to, or responsibility for, the alleged illegal action." *Brisco v. Rice*, No. 11-CV-578, 2012 WL 253874, at *4 (E.D.N.Y. Jan. 27, 2012) (quotation omitted).

In this case, plaintiff has failed to offer any non-conclusory allegations that the Commissioner has a particular duty to enforce any of the ACA provisions as to which plaintiff seeks injunctive or declaratory relief, or a demonstrated willingness to exercise such a duty. Plaintiff merely claims that the Commissioner "is responsible for all aspects of the administration of Vermont Health Access and Vermont Health Connect" and that DVHA and

Vermont Health Connect are, in turn, responsible "for making available qualified health plans to Vermont residents and certifying the individuals who are exempt from the requirements of the individual mandate." Compl. ¶¶ 16, 14-15. However, first, plaintiff fails to allege that the Commissioner, DVHA or Vermont Health Connect have any duty or role in enforcing the ACA's abortion coverage notice provisions, nor does the relevant statutory or regulatory language purport to assign any enforcement responsibility to the states with respect to regulating the types of information insurers may or may not disclose to their insureds about their plans' coverage of, and payment for, abortion. *See* 42 U.S.C. § 18023(b)(3); 45 C.F.R. § 156.280(f).

Second, neither the Commissioner, DVHA, nor Vermont Health Connect have any responsibility for enforcing the ACA's individual mandate, or assessment of the "[s]hared responsibility payment" upon those who fail to comply with it. *See* 26 U.S.C. § 5000A(a) & (b). Rather, the federal Secretary of the Treasury assesses and collects this tax from non-compliant individuals upon "notice and demand," *see* 26 U.S.C. § 5000A(g), after "send[ing] a notification to each individual who files an individual income tax return and who is not enrolled in minimum essential coverage." 42 U.S.C. § 18092.

The only part that state actors play in this process is that, by federal regulation, state Exchanges are required to annually provide the IRS with the name and tax identification number (or date of birth) of every individual covered under a qualified health plan on that Exchange. 26 C.F.R. § 1.36B-5(c)(vi). However, a state official who merely advises or supplies information to other officials responsible for enforcing a statute is not a proper *Ex parte Young* defendant. *See Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) (stating that an official's mere provision of database information to local sheriffs charged with enforcing a concealed weapons statute was not a sufficient enforcement connection to sustain an *Ex parte Young* action against

him).[4] Thus, the Commissioner cannot be sued for prospective relief based upon Vermont Health Connect's provision of information about insured individuals to the IRS that the Secretary of the Treasury may then use to ascertain and tax those who do not comply with the individual mandate. Indeed, Plaintiff's complaint recognizes the Commissioner's lack of an enforcement connection to the individual mandate by seeking only to enjoin the "Federal Defendants from imposing the individual mandate to penalize Plaintiff for his failure to obtain a qualified health plan." Compl. 23 ¶ 5.

It is true that Vermont Health Connect is directed by the ACA and Vermont statute to grant certifications to persons who are exempt from the individual mandate under one of the exemptions enumerated by 26 U.S.C. § 5000A(e) and transfer to the Secretary of the Treasury a list of the individuals who have received this certification. *See* 42 U.S.C. § 18031(d)(4)(H)&(I); Vt. Stat. Ann. tit. 33 § 1805(8) (2014). However, Vermont Health Connect is only empowered to grant such an exemption certification when "an applicant [has] submitted an application for such exemption." 45 C.F.R. § 155.605(b). Plaintiff has failed to allege that he has ever submitted an application to Vermont Health Connect for exemption from the ACA's individual mandate, nor that he has any intent to do in the future, probably because he recognizes that he does not qualify for any such exemption under the ACA's criteria. Compl. ¶ 42. Plaintiff therefore cannot claim that the Commissioner is responsible for any threatened denial of an exemption from the ACA's

---

[4] *See also 1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113-14 (3d Cir. 1993) (holding that the Pennsylvania Attorney General's "duty to advise the Secretary [of Education], and the Secretary's subsequent advice to the School District, cannot serve as a predicate for liability" under *Ex parte Young* since "the Secretary's act of advising the School District about the constitutionality of the statute differs significantly from a duty to enforce section 754"); *Doe v. Sorsai*, No. 3:12-CV-65, 2012 WL 2954107, at *13 (S.D. W. Va. June 18, 2012) (holding that because role of defendant staff attorney with West Virginia Department of Education in proceedings for revocation of plaintiff's teaching licenses was limited to "providing legal consultative services," such as investigating and making a "recommendation" to Department, but that revocation decision statutorily rests with state Superintendent of Education, *Ex parte Young* claim against staff attorney seeking to enjoin further investigation and revocation proceedings would be dismissed).

individual mandate.

Moreover, the eligibility standards for exemptions from the individual mandate are prescribed by federal, not Vermont law. *See* 45 C.F.R. § 155.605. Accordingly, the Commissioner has no authority to alter or waive these standards, even if Howe were to apply for an exemption. After arguing that he "does not qualify for any hardship or other exemption from this [individual mandate] requirement," Compl. ¶¶ 42, 25, Plaintiff now argues that the Commissioner does have the "discretion" to grant him a hardship exemption. *See* Doc. 35, at 8, 20. However, barring the applicant's financial inability to purchase a qualified health plan, a "hardship" exemption is only available if the applicant "has experienced other circumstances that prevented him or her from obtaining coverage under a qualified health plan." 45 C.F.R. § 155.605(g).

Here, Howe has not alleged that he has been prevented by any external circumstances, financial or otherwise, from obtaining and keeping his private insurance coverage through Vermont Health Connect. Rather, Howe indicates that he is able to obtain coverage, but has deliberately chosen to terminate his insurance due to his religious opposition to abortion. Howe's free and deliberate exercise of his religious beliefs plainly does not qualify as an exigent "hardship" under § 155.605(g) and the Commissioner therefore lacks the discretion or ability under federal law to grant plaintiff a hardship exemption from the individual mandate, an exemption for which Howe has yet to apply.

Third, the ACA's abortion segregation provisions are, likewise, requirements created by federal law and thus primarily enforced by the federal government. The ACA does contemplate some role for state health insurance commissioners in ensuring compliance with this requirement, 42 U.S.C. § 18023(b)(2)(E)(i), but the implementing regulation clarifies that

insurers who offer plans through a state Exchange that cover abortion must provide state health insurance commissioners with a "segregation plan" and "annual assurance statement." 45 C.F.R. § 156.280(e)(5)(ii)&(iii). Although the federal regulation requires insurers to provide information to state insurance commissioners, it imposes no affirmative enforcement role on states. Plaintiff has not claimed that the DVHA Commissioner is Vermont's equivalent of a "State health insurance commissioner," or more importantly for *Ex parte Young* analysis, that he has taken or intends to take any action to enforce the requirements of 42 U.S.C. § 18023 and 45 C.F.R. § 156.280. Moreover, any state role in this area is limited to following the federal-law requirement. *Cf.* Vt. Stat. Ann. tit. 8 § 4062c (requiring health insurers to comply with ACA). A state official does not have authority to relieve an insurer of the obligation to comply with federal law.

Fourth, Plaintiff has failed to allege that the Commissioner has threatened to take any action that would jeopardize his entitlement to subsidies, such as premium tax credits and cost-sharing reductions, meant to reduce the cost of insurance purchased on a state Exchange. *See* 26 U.S.C. § 36B; 42 U.S.C. § 18071. Indeed, both premium tax credits and cost-sharing reduction payments are paid by the Secretary of the Treasury directly to the insurer, not through the state Exchanges. *See* 42 U.S.C. § 18082(c).[5] For this reason, Plaintiff's complaint seeks to

---

[5] Vermont Health Connect is directed by Vermont statute to "[d]etermin[] enrollee premiums and subsidies [under the ACA] as required by the Secretary of the U.S. Treasury or of the U.S. Department of Health and Human Services and inform[] consumers of eligibility for premiums and subsidies." Vt. Stat. Ann. 33 tit. § 1805(6) (2014). However, under the ACA and its implementing regulations, subsidy eligibility determinations by state Exchanges are to be based upon the enrollee's household income. 26 U.S.C. § 36B(b)(2)(B); 42 U.S.C. § 18071(b)(2); 45 C.F.R. § 155.305(f) & (g). Thus, neither Vermont Health Connect, DVHA nor the Commissioner have any authority to determine plaintiff ineligible for subsidies based upon his religious beliefs, nor does plaintiff allege that any Vermont Defendants are threatening to do so.

preliminarily and permanently enjoin only the "Federal Defendants from withholding subsidies for health plans otherwise available to Plaintiff." Compl. 23 ¶ 6.[6]

Finally, the Commissioner has no obligation under the ACA or any constitutional duty to "ensure[] that [Vermont Health Connect] includes plans that do not include elective abortion," as plaintiff suggests. *Id.* ¶ 63. Rather, as plaintiff alleges, it is the responsibility of the Director of the federal Office of Personnel Management to contract with insurers for at least one multi-state plan that does not cover abortion to be available through each Exchange in every state (including Vermont) by 2017. *See* 42 U.S.C. § 18054(a)(6) & (e)(4); Compl. ¶¶ 53-54.

In his reply in support of his motion for preliminary injunction, Howe makes the mistaken legal contention that the Director is "responsible for contracting for and/or authorizing any plans to be provided through Vermont Health Connect, including any multi-state plan offering or contracting for any other plan that excludes elective abortion coverage." Doc. 35, at 8. However, the ACA provision governing multi-state plans indicates that when federal OPM contracts with an insurer to offer a multi-state plan, that plan is automatically deemed certified by the relevant state Exchanges as a "qualified health plan," without need for the affected states' actual approval or authorization. *See* 42 U.S.C. § 18054(d). The only role that states may play in multi-state plans added to their Exchanges by federal action is that they may (1) require the multi-state plan in their state to offer certain benefits in addition to the minimum required by the ACA; and (2) they may impose more restrictive age-rating requirements than those set by the ACA. *See* 42 U.S.C. § 18054(c)(2)&(5). However, federal OPM has no need for the Commissioner's approval in order to add a non-abortion multi-state plan to Vermont Health Connect.

---

[6] As noted *supra* p. 11, note 2, Mr. Howe has not pled any claim with respect to a loss or denial of Vermont subsidies.

In addition, the Commissioner cannot be affirmatively enjoined to somehow procure non-abortion plans from private insurers, who are free under the ACA and Vermont law to cover or not cover elective abortion in their Exchange-listed plans as they see fit. *See* 42 U.S.C. § 18023(b)(1); 45 C.F.R. § 156.280(c). Plaintiff has not alleged that the Commissioner has ever prevented or threatened to prevent a health insurance plan that does not cover abortion from being made available through Vermont Health Connect. Indeed, plaintiff has not plausibly claimed that any private insurer even wants to offer such a non-abortion plan in Vermont.

Plaintiff has failed to sufficiently allege that the Commissioner has a direct connection to, or responsibility for any of the purportedly illegal conduct at issue in this action.[7] The Commissioner is therefore an improper *Ex parte Young* defendant for every form of declaratory and injunctive relief that plaintiff seeks in this action.

## C. Mr. Howe Lacks Standing to Sue the Commissioner Because the Court Cannot Enter Relief Against the Commissioner That Would Redress Any Alleged Injury

A plaintiff bears the burden of establishing the three "irreducible" elements for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The first requirement is "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and quotations omitted). Next, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the

_____

[7] As explained above, even if the Court concluded that the Commissioner had some enforcement role, under *Ex parte Young*, any injunctive relief against the Commissioner must necessarily be limited to redressing a continuing or imminent First Amendment violation by the Commissioner, not a First Amendment or RFRA violation by any of the Federal Defendants. Thus, the Commissioner may not be enjoined based on a holding that Mr. Howe is entitled to an accommodation or exemption under RFRA.

court." *Id.* (quotations omitted; alterations in original). And last, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

Howe cannot satisfy the last prong, redressability, for at least three reasons.

First, as courts have recognized, the *Ex parte Young* enforcement-connection requirement "overlaps with the causation and redressability analyses in the standing inquiry." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 916-17 (E.D. Wis. 2002). Thus, when a state official has no authority or duty to enforce the challenged aspects of a statute, the plaintiff lacks constitutional standing to sue the official for injunctive or declaratory relief. *See HealthNow*, 448 F. App'x 79, at 81 (where district court had dismissed claim against New York attorney general for lack of *Ex parte Young* enforcement connection, affirming on standing grounds and noting that "[n]othing the Attorney General is doing or could threaten to do under [the challenged statute] is effecting" plaintiff's claimed injury-in-fact); *Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012) ("As is often the case, redressibility turns on the scope of authority of the defendants. We ask: Could these Defendants, enjoined as [plaintiff] has requested, remedy [plaintiff's injury]?"). Therefore, "if a defendant does not have the authority to carry out the injunction, a plaintiff's claim for injunctive relief must be dismissed because the Court cannot enjoin a defendant 'to act in any way that is beyond [the defendant's] authority in the first place.'" *Swan v. Bd. of Educ.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013) (quoting *Okpalobi*, 244 F.3d at 426-27). The Court cannot enjoin the Commissioner's enforcement of a federal statute enforced by federal agencies.

Second, any such relief entered against the Commissioner would be futile, because the final responsibility for the challenged laws rests with the federal government. All of the provisions identified by Howe – the separate allocation requirement, the rule regarding notice, the individual mandate, the availability of federal subsidies – are the primary responsibility of

federal agencies. Injunctive relief ordering the Commissioner to not enforce, for example, the separate allocation requirement would serve no purpose, because the Commissioner cannot relieve insurers of that obligation created by federal law. Nor can the Commissioner release Howe from his federal tax obligations.

Third, to the extent that Howe claims he is injured because the available insurance policies provide coverage for abortion, his claim cannot be redressed through this action. The Court cannot order private insurers to change their plans, nor can the Court require private insurers to treat Howe any differently from other subscribers. Even if the Court directed defendants not to enforce the separate allocation requirement,[8] it is not "likely," as opposed to "speculative," that the relief would redress the injury he claims. *See Lujan*, 504 U.S. at 561; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976) (plaintiffs lacked standing to challenge new IRS rule that lessened incentives for hospitals to treat indigent patients; no hospital was a party, and it was "purely speculative" that IRS rule caused hospitals to deny services, or that plaintiffs would receive hospital services if court ordered IRS to reinstate prior rule). An insurer would remain free to treat Howe's premiums the same way it treats other insureds' premiums.

The suggestions offered by Howe to support his argument that his claims are redressable (Doc. 35, at 6-7) in fact confirm his lack of standing. First, he suggests that the Court order "defendants" to "[c]ontract for and approve a multi-state plan on the exchange." Doc. 35, at 7. Setting aside the Commissioner's lack of authority over multi-state plans, the Court in any event cannot order an insurer to offer a multi-state plan that excludes abortion coverage in Vermont. Second, and similarly, the Court cannot order the Commissioner to "[c]ontract for and approve a

_____
[8] The Federal Defendants have already offered, on the record, not to enforce this requirement against an insurer offering coverage to Mr. Howe. For this reason, too, an injunction entered against the Commissioner ordering such relief would serve no purpose.

non-multi-state plan on the exchange" that excludes abortion coverage. Insurers have a right to offer coverage for abortion in their plans, and neither the Commissioner nor the Court can force them not to do so.

Howe's third suggested form of relief is to "exempt [him] from the separate abortion payment on an existing plan." Doc. 35, at 7. The Commissioner has no authority to do so. Finally, Howe suggests that the Court order defendants to grant him an exemption from the ACA and to provide him directly with the subsidies "so that he can use these benefits to manage his own health expenses." *Id.* Again, the Commissioner does not enforce the individual mandate and has no authority or ability to disperse federal funds to Howe.

Because Howe has not identified any relief that can be entered against the Commissioner and would redress his alleged injury, he lacks standing.

## CONCLUSION

For the foregoing reasons, the Vermont Defendants respectfully request that the Court grant Vermont Defendants' Motion to Dismiss.

May 1, 2015                     Respectfully submitted,


                               VERMONT HEALTH CONNECT;
                               DEPARTMENT OF VERMONT HEALTH
                               ACCESS; and STEVEN M. COSTANTINO,
                               Commissioner of the Department of
                               Vermont Health Access

                               WILLIAM H. SORRELL
                               Attorney General

                    By:     /s/ *Jon T. Alexander*
                               Bridget C. Asay
                               Jon T. Alexander
                               Assistant Attorneys General
                               Office of the Attorney General
                               109 State Street
                               Montpelier, VT 05609-1001
                               (802) 828-5500
                               bridget.asay@state.vt.us
                               jon.alexander@state.vt.us

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2015, I electronically filed Vermont

Defendants' Motion to Dismiss and Incorporated Memorandum of Law with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to and serve the

following NEF parties:

> Nikolas Kerest
> Nikolas.Kerest@usdoj.gov
>
> Caroline Lewis Wolverton
> Caroline.Lewis-Wolberton@usdoj.gov
>
> Michael J. Tierney, Esq.
> mtierney@wadleighlaw.com
>
> M. Casey Mattox, Esq.
> cmattox@alliancedefendingfreedom.org

In addition, I caused Vermont Defendants' Motion to Dismiss and Incorporated

Memorandum of Law to be served by mailing it by United States Postal Service to the following

non-NEF counsel:

> Steven H. Aden, Esq.
> Alliance Defending Freedom
> 801 G Street, N.W.
> Washington, DC  20001

Dated at Montpelier, Vermont this 1st day of May, 2015.

VERMONT HEALTH CONNECT;
DEPARTMENT OF VERMONT HEALTH
ACCESS; and STEVEN M. COSTANTINO,
Commissioner of the Department of
Vermont Health Access

WILLIAM H. SORRELL
Attorney General

By:    /s/ *Jon T. Alexander*
Bridget C. Asay
Jon T. Alexander
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5500
bridget.asay@state.vt.us
jon.alexander@state.vt.us