U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2015 JUL 21  PM 4: 14

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| ALAN LYLE HOWE, JR.,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Case No. 2:15-cv-6 |
| ) | |

SYLVIA BURWELL, in her official capacity )
as Secretary of the United States Department )
of Health and Human Services; THOMAS )
PEREZ, in his official capacity as Secretary )
of the United States Department of Labor; )
JACOB J. LEW, in his official capacity as )
Secretary of the United States Department of )
the Treasury; KATHERINE ARCHULETA, )
in her official capacity as the Director of the )
Office of Personnel Management; UNITED )
STATES DEPARTMENT OF HEALTH )
AND HUMAN SERVICES; UNITED )
STATES DEPARTMENT OF LABOR; )
UNITED STATES DEPARTMENT OF THE )
TREASURY; and OFFICE OF PERSONNEL )
MANAGEMENT; VERMONT HEALTH )
CONNECT; DEPARTMENT OF VERMONT )
HEALTH ACCESS; and STEVEN M. )
CONSTANTINO, in his official capacity as )
Commissioner of Vermont Health Access, )
)
Defendants. )

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION AND GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS**
(Docs. 2, 39, 40)

On April 9, 2015, the court heard oral argument on Plaintiff Alan Lyle Howe, Jr.'s

motion for a preliminary injunction (Doc. 2) and took it under advisement.  Pursuant to

Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Defendants[1] subsequently filed motions to dismiss Plaintiff's claims (Docs. 39, 40), Plaintiff filed his opposition, and on June 8, 2015 those motions became ripe for adjudication.

In his four count Verified Complaint, Plaintiff seeks declaratory and injunctive relief arising out of the segregation of a portion of his health insurance premiums to cover non-federally funded ("NFF") abortion services as required by the Affordable Care Act (the "ACA"), 42 U.S.C. § 18023(b)(2). He alleges that forcing him to pay for NFF abortion services is contrary to his genuinely held religious beliefs, violates his constitutional rights, and fails to reflect accommodations to which he is entitled.

In Count I, Plaintiff alleges that the Federal Defendants have violated the federal Religious Freedom Restoration Act (the "RFRA"), 42 U.S.C. § 2000bb-1, because they have failed to offer an accommodation for a substantial burden on his religious beliefs. In Count II, he alleges that the State Defendants violated the Free Exercise Clause in Chapter 1, Article 3 of the Vermont Constitution on the same basis. In Count III, Plaintiff alleges a parallel claim against all Defendants under the Free Exercise Clause of the First Amendment to the U.S. Constitution. In Count IV, Plaintiff alleges that Defendants infringed upon his right to receive information regarding NFF abortion services coverage in violation of the Free Speech Clause to the First Amendment of the U.S. Constitution.

Plaintiff seeks a preliminary injunction only with regard to his RFRA and Free Exercise claims and only against the Federal Defendants and State Defendant

---

[1] Plaintiff alleges claims against Defendant Sylvia Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services ("HHS") and against HHS; against Thomas Perez, in his official capacity as Secretary of the United States Department of Labor ("DOL") and against DOL; against Jacob J. Lew, in his official capacity as Secretary of the United States Department of the Treasury (the "Treasury") and against the Treasury; against Katherine Archuleta, in her official capacity as Director of the Office of Personnel Management ("OPM") and against OPM. Collectively, these defendants are referred to herein as the "Federal Defendants." Plaintiff alleges claims against Defendant Steven M. Constantino, in his official capacity as the Commissioner of the Department of Vermont Health Access ("VHA") which is responsible for the administration of Vermont Health Connect ("VHC"); and also asserts claims directly against VHA and VHC. Collectively, these defendants are referred to herein as the "State Defendants."

Commissioner Constantino.  Defendants oppose Plaintiff's request for preliminary injunctive relief, arguing, among other things, that Plaintiff lacks standing to seek relief that can only be provided by third party health insurers who are not before the court.

Defendants' motions to dismiss seek dismissal of all claims against them on a variety of grounds including lack of subject matter jurisdiction, standing, ripeness, failure to state a claim, and sovereign immunity.  Plaintiff opposes dismissal.

Plaintiff is represented by M. Casey Mattox, Esq., Michael J. Tierney, Esq., and Steven H. Aden, Esq.  The Federal Defendants are represented by Assistant United States Attorney Caroline L. Wolverton and Assistant United States Attorney Nikolas P. Kerest. The State Defendants are represented by Vermont Solicitor General Bridget C. Asay and Vermont Assistant Attorney General Jon T. Alexander.

## I.      Factual and Procedural Background.

### A.      Plaintiff's Verified Complaint and the ACA.

Plaintiff works part-time and is not entitled to health insurance from his employer. He is also not entitled to any form of public assistance to defray his healthcare costs.  He avers that he "is a Christian and believes in the sanctity of human life from the point of conception." (Doc. 1 at 6, ¶ 19.)  He further avers that he "is strongly opposed to paying for the destruction of human life by others through insurance coverage for elective abortion."  *Id.*  Plaintiff has no dependents and thus no possibility of ever using insurance coverage for abortion services.  Defendants do not contest whether Plaintiff's religious beliefs are genuinely held.

The ACA requires non-exempt individuals[2] to obtain and maintain "minimum essential coverage" (the "individual mandate") or pay a tax penalty.[3]  *See* 26 U.S.C.

---

[2] Under 42 U.S.C. § 18031(d)(4)(H), an individual is entitled to an exemption where "there is no affordable qualified health plan available" or where "the individual meets the requirements for any other such exemption[.]"  A person is entitled to an exemption from the individual mandate on various grounds, including "if the applicant is a member of a recognized religious sect or division described in [26 U.S.C. §] 1402(g)."  45 C.F.R. § 155.605(c)(1).  Section 1402(g)(1) authorizes an exemption to the individual mandate for religious sects that are "conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement[.]"

§ 5000A(a). Plaintiff has not applied for an exemption from the ACA's individual mandate and he avers that he is not entitled to one.

For non-exempt individuals, Congress has authorized the states to establish their own health insurance exchanges ("Exchanges") through which state residents may purchase health insurance from insurers that have agreed to participate in the state's Exchange. *See* 42 U.S.C. § 18041(b). In Vermont, VHC is the Exchange. As an Exchange, VHC certifies that the health insurance offered to Vermonters provides coverage for certain essential health benefits; determines plan enrollment eligibility; calculates the value of certain subsidies; and certifies exemptions from the tax penalty. *Id.* §§ 18021(a)(1)(B); 18031(d)(4). Commissioner Constantino, as Commissioner of VHA, is responsible for the administration of VHC.

In the fall of 2013, Plaintiff was advised that, due to the ACA, his health insurance plan was being cancelled and he would need to enroll in a plan through VHC. For the 2014 plan year, Plaintiff selected the Blue Cross and Blue Shield of Vermont Blue Rewards Non-Standard Silver plan (the "BCBSVT plan") through VHC. Plaintiff alleges that he examined the Summary of Benefits and Exclusions for the BCBSVT plan and erroneously concluded that it did not offer coverage for NFF abortion services. The State Defendants contest this allegation and proffer evidence that Plaintiff had access to the notification required by law that the BCBSVT plan offered coverage for NFF abortion services.[4] *See* Doc. 29-8 at 19 (2014 BCBSVT Certificate of Coverage) (listing covered

---

[3] Individuals without "minimum essential coverage" as required by 26 U.S.C. § 5000A(f)(1), must pay an annual penalty for 2015 of either 2% of the taxpayer's household income that is above the tax return filing threshold, or $325 per adult, whichever is greater. *Id.* § 5000A(c)(2)(B)(ii), 5000A(c)(3)(B).

[4] The ACA dictates that a health insurer that chooses to offer coverage for NFF abortion services must, at the time of enrollment, provide a notice to enrollees of such coverage in its summary of benefits and coverage explanation. 42 U.S.C. § 18023(b)(3)(A). This "notice . . . shall provide information only with respect to the total amount of the combined payments for [NFF abortion services] and other services covered by the plan." 42 U.S.C. § 18023(b)(3)(B). This provision extends to "any advertising used by the [health insurance] issuer with respect to the plan" and "any information provided by the Exchange[.]" *Id.*

4

outpatient medical services for the BCBSVT plan as including "abortion services"); Doc. 29-9 at 20 (2015 BCBSVT Certificate of Coverage) (same).

Under the ACA, an insurer offering a health insurance plan has a "[v]oluntary choice [to provide] coverage of abortion services[.]" 42 U.S.C. § 18023(b)(1). The ACA thus neither requires health insurers to provide coverage for NFF abortion services, nor prohibits them from doing so. A state may enact legislation that "prohibit[s] abortion coverage" in qualified health plans ("QHPs") offered by a state's Exchange. *See* 42 U.S.C. § 18023(a). Vermont's General Assembly has chosen not to do so.

Pursuant to the Hyde Amendment, federal funds may not be used to pay for abortion services except in the case of rape, incest, or danger to the life of the mother.[5] In order to comply with the Hyde Amendment, a health insurer that chooses to offer coverage for NFF abortion services must segregate a portion of each subscriber's premium as a "separate payment" to pay for those services (the "segregation requirement") and must collect at least "$1 per enrollee, per month" and place that money into a separate account (the "allocation account"). 42 U.S.C. § 18023(b)(2)(D)(ii)(III). The insurer must pay for all NFF abortion services out of the allocation account, although it may use any excess monies to pay for other benefits and services. It is undisputed that the BCBSVT plan uses only 4% of the funds collected as separate payments for NFF abortion services.

Plaintiff paid his first monthly premium for the BCBSVT plan on March 21, 2014. Because of the amount of his income, Plaintiff was entitled to federal and state subsidies totaling $376 per month to cover a monthly premium of $395.

---

[5]    Following the recent enactment of the Patient Protection and Affordable Care Act (the "Act"), it is necessary to establish an adequate enforcement mechanism to ensure that Federal funds are not used for abortion services (except in cases of rape or incest, or when the life of the woman would be endangered), consistent with a longstanding Federal statutory restriction that is commonly known as the Hyde Amendment.

Exec. Order No. 1353575, 75 Fed. Reg. 15,599 (Mar. 24, 2010).

In November 2014, Plaintiff alleges that he became aware that the BCBSVT plan provided coverage for NFF abortion services and segregated a portion of Plaintiff's premium to pay for those services in accordance with the ACA's segregation requirement. The State Defendants contest this claim and proffer evidence that Plaintiff ceased paying his health insurance premiums prior to the November 2014 date. In addition, the State Defendants proffer evidence that Plaintiff's health insurance plan prior to the ACA also provided coverage for NFF abortion services. In light of these contested facts, Plaintiff agrees that the court cannot rely on Plaintiff's assertion that he cancelled his health insurance coverage because of his genuinely held religious beliefs. Instead, the court can only rely on Plaintiff's representation that he seeks to obtain health insurance now and in the future that either does not provide coverage for NFF abortion services or that does not require a separate payment which is segregated and used for NFF abortion services.

Every health insurance plan offered on VHC at this time provides coverage for NFF abortion services. Moreover, Defendants represent that every health insurance plan available in Vermont from a source other than VHC also provides coverage for NFF abortion services.

The ACA authorizes OPM through its Director to contract with health insurers in order to offer at least two multi-state QHPs through each state's Exchange. 42 U.S.C. § 18054(a)(1). The ACA provides that at least one of these multi-state QHPs must not provide coverage for NFF abortion services. *Id.* § 18054(a)(6). A health insurer cannot be compelled to offer a multi-state QHP and, at present, no health insurer has contracted with OPM to offer a multi-state QHP in Vermont.

If Plaintiff does not comply with the individual mandate, he will be responsible for the tax penalty no earlier than April 18, 2016 when his 2015 federal tax return must be filed. In his Verified Complaint, Plaintiff makes no allegation that he needs to arrange his finances now in order to pay the tax penalty when and if it becomes due.

**B.    The Parties' Stipulations and Plaintiff's Revised Requests for Relief.**

The Federal Defendants have stipulated that they "are willing to forego enforcement of 42 U.S.C. § 18023(b)(2)'s segregation requirement as to an insurer who agrees to insure Mr. Howe and not segregate any portion of his payment for the NFF abortion account, so long as no plan offered through [VHC] excludes NFF abortion coverage." (Doc. 40 at 4.) The Federal Defendants further represent that they tried to persuade the two health insurers that offer insurance coverage through VHC to create a plan for Plaintiff that does not provide coverage for NFF abortion services but were unsuccessful. Although these representations have no evidentiary value, they cast doubt on Plaintiff's argument that an injunction is likely to cause third party insurers, who are not subject to the injunction, to alter their behavior and provide Plaintiff with the health insurance he desires.[6]

The State Defendants, in turn, have agreed to extend VHC's February 15, 2015 enrollment deadline and provide a special enrollment period for Plaintiff if the court rules in his favor. *See* Doc. 8 at 2, ¶ 4 ("Counsel for the Vermont Defendants represent that they will permit a special enrollment period after February 15, 2015, if needed to effectuate any order of this Court in Plaintiff's favor, and counsel for the federal Defendants represent that they will not oppose such action.").

In his motion for a preliminary injunction, Plaintiff requests the following relief:

Howe requests a preliminary injunction against Defendants, ordering them not to apply or enforce against him 45 C.F.R. § 156.280(e)(ii)(3) and 42 U.S.C. § 18023(b)(1)(B)(i)(II) ([the separate payment and segregation requirement]), which require Howe to directly pay for others' elective abortions, 42 U.S.C. [§] 5000A(b)(1) ("the individual mandate"), which imposes fines on Howe because he is unable to obtain a plan through Vermont Health Connect without violating his religious convictions against paying for others' abortions, and from otherwise enforcing the Affordable Care Act ("ACA") and Access Health Connecticut [presumably the reference is intended to be to VHC] so as to withhold benefits from and

---

[6] Plaintiff opened the door to these representations by asserting in his reply brief that "Defendants relate no specific efforts they made to contract for either a multistate or a non-multistate plan on the Vermont [E]xchange that would exclude elective abortion coverage." (Doc. 35 at 21.)

punish Howe because of his religious beliefs against enabling and paying for others' elective abortions.

(Doc. 2 at 2.)  At oral argument, Plaintiff conceded that the court cannot compel third party insurers to provide health insurance that does not offer coverage for NFF abortion services.  Accordingly, to the extent his motion contains such requests, they are withdrawn.[7]

In his briefing, Plaintiff seeks to extend his request for injunctive relief to include an order that Defendants "pay for [his] health expenses in the short term while they work toward a more permanent solution" or "[a]t a bare minimum, Defendants can provide [him] the subsidies to which he would be entitled were he able to enroll in a plan through Vermont Health Connect."  (Doc. 41 at 14.)

## II.    Conclusions of Law and Analysis.

### A.    Standards for Dismissal and Injunctive Relief.

The Federal Defendants seek dismissal of all claims against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  The State Defendants seek dismissal of the claims against them on this same basis and assert Eleventh Amendment immunity as well.

---

[7] Notwithstanding the narrowing of his requests for injunctive relief, Plaintiff's requests remain arguably inconsistent.  For example, Plaintiff states that "[d]espite Defendants' mischaracterization of the facts at hand, Howe does not seek to force a private insurer to provide a different kind of plan" (Doc. 41 at 3), but he nonetheless argues that it "strains credulity" that the Federal Defendants have "no leverage to include such a [multistate] plan [without coverage for NFF abortion services] in Vermont where it is needed to prevent a RFRA violation" and "Commissioner Constantino can also impose requirements for insurer participation in Vermont Health Connect to ensure that Vermont citizens have plan options that do not include a separate abortion payment."  (Doc. 41 at 10.)  Similarly, he both argues that "Defendants can exempt Howe from the individual mandate" (Doc. 41 at 12), and avers he is not entitled to an exemption. *See* Doc. 1 at 11, ¶ 42 ("On information and belief, Mr. Howe does not qualify for any hardship or other exemption from this requirement [to comply with individual mandate]."); *id.* at 16, ¶ 64 (averring that "he does not qualify for the religious exemption from the individual mandate and, on information and belief, does not qualify for any other exemption from the individual mandate").

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.*

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "[B]ecause jurisdiction must be shown affirmatively, courts do not draw inferences from the pleadings in favor of the petitioner." *Lakhani v. U.S. Citizenship & Immigration Servs.*, 2013 WL 3829624, at *2 (D. Vt. July 23, 2013). "Determining subject matter jurisdiction is a 'threshold inquiry,' and should be addressed prior to any consideration of the Complaint's substantive merits." *Grundstein v. Vermont*, 2011 WL 6291955, at *2 (D. Vt. Dec. 15, 2011) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)).

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a court assumes "all well-pleaded, nonconclusory factual allegations in the complaint to be true," *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), and determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court also draws "all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). However, the court does not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

The district court's role "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal quotation marks omitted). In making this determination, the court therefore does not evaluate the credibility of the Plaintiff's factual allegations even if made under oath. *See Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995) ("In considering a motion under Fed. R. Civ. P. 12(b)(6), it is not the function of the court to weigh the evidence or evaluate the credibility of witnesses[.]") (citation omitted).

In the event that the court determines that one or all of Plaintiff's claims must be dismissed for lack of subject matter jurisdiction, Plaintiff's request for preliminary injunctive relief with regard to the dismissed claim will become moot. *See Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 2005 WL 1923566, at \*2 (N.D. Tex. Aug. 11, 2005), *aff'd*, 455 F.3d 500 (5th Cir. 2006) ("[A] court lacks the authority to provide injunctive relief once it has determined that it lacks jurisdiction over the underlying case."). A dismissal for failure to state a claim for which relief may be granted produces this same result. For those claims that are not dismissed, the court must analyze whether Plaintiff has established his entitlement to preliminary injunctive relief.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (ruling that "when a party seeks an injunction that will affect governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the plaintiff must typically show a likelihood of success on the merits—a serious question going to the merits is usually insufficient, even if the balance of hardships tips decidedly in the applicant's favor."). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction[.]" *Bell & Howell: Mamiya Co. v. Masel Supply Corp.*, 719 F.2d 42, 45 (2d Cir. 1983) (internal quotation marks omitted); *see also Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 n.6 (2d Cir. 2010) (noting that "*Winter* reiterates the majority position of the circuits, including [the Second Circuit], that a showing of irreparable harm is fundamental to any grant of injunctive relief"). Plaintiff must therefore proffer persuasive evidence that he will suffer irreparable harm "if he . . . loses on the preliminary injunction but ultimately prevails on the merits, [with] particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Plaintiff must also establish that his alleged harm is not self-inflicted. *See Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001) ("The case law is well-settled that '[a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.'") (citation omitted); 11A Charles A. Wright, Federal Practice and Procedure § 2948.1 (3d ed. 1998) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.").

Finally, in seeking preliminary injunctive relief, Plaintiff cannot rest on mere arguments; he must proffer admissible evidence that clearly demonstrates his entitlement to the requested relief. *See 1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1063 (8th Cir. 2014) (noting that, to obtain a preliminary injunction, "the record must contain more than allegations; it must contain facts"). If Plaintiff's evidence is contested, the court cannot consider it in adjudicating the motion unless an evidentiary hearing is held. *See Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) ("'The existence of factual disputes necessitates an evidentiary hearing . . . before a motion for a preliminary injunction may be decided.'") (alteration in original) (quoting *Commodity Futures Trading Comm'n v. Incomco, Inc.*, 649 F.2d 128, 131 (2d Cir. 1981)).

11

In this case, the parties waived their right to an evidentiary hearing regarding Plaintiff's motion for a preliminary injunction. Because of that waiver, they agree that the court must rely only on undisputed evidence in adjudicating the motion.

## B.    Count II: Plaintiff's Alleged Violations of Vermont's Constitution.

In Count II of his Verified Complaint, Plaintiff alleges that the State Defendants violated Chapter I, Article III of the Vermont Constitution through their interpretation, application, and enforcement of the ACA. The State Defendants argue that the court lacks subject matter jurisdiction to hear a state constitutional claim against state defendants in federal court.

The Eleventh Amendment of the U.S. Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As the Second Circuit explained:

> [P]roceeding in federal court in a suit such as this potentially raises Eleventh Amendment concerns in light of the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). *Pennhurst* made clear that the Eleventh Amendment prevents a federal court from granting injunctive relief against a state official on the basis of state law. Thus, if a federal court were to construe state law in favor of a plaintiff challenging the application of state law, the court could not enforce that judgment by issuing an injunction.

*Fleet Bank, Nat'l Ass'n v. Burke*, 160 F.3d 883, 891 (2d Cir. 1998). Plaintiff's requests for declaratory relief based on state law raise these same concerns. Permitting "a federal court [to] instruct[] state officials on how to conform their conduct to state law . . . conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. As a result, in federal court, "[s]uits against state officers . . . can only seek prospective injunctive or declaratory relief for violations of federal law." *Davis v. Pallito*, 2011 WL 4443026, at *6 (D. Vt. June 16, 2011), *report and recommendation adopted*, 2011 WL 4443008 (D. Vt. Sept. 22, 2011).

Plaintiff bears the burden of establishing subject matter jurisdiction for each of his claims. *Makarova*, 201 F.3d at 113. Because he fails to establish that this court is authorized to adjudicate his state constitutional claims against the State Defendants, *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 106, Count II must be DISMISSED pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## C.   Plaintiff's Claims Against State Defendants VHA and VHC.

In Counts II, III, and IV, Plaintiff alleges that VHA and VHC violated both his state and federal constitutional rights by burdening Plaintiff's free exercise of his religion and by allegedly failing to disclose that all of the health insurance plans available from VHC offer coverage for NFF abortion services. VHA and VHC seek dismissal of these claims on the grounds of Eleventh Amendment immunity. The court has previously dismissed Count II and thus only Plaintiff's Free Exercise and Free Speech claims against VHA and VHC remain.

VHA is a department within the Vermont Agency of Human Services, *see* 3 V.S.A. §§ 212(24); 3088, and VHC is administered by VHA, *see* 33 V.S.A. § 1803(a). Plaintiff does not dispute that both of these State Defendants are arms of the State of Vermont.

"Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011) ("Sovereign immunity is the privilege of the sovereign not to be sued without its consent."); *Sossamon v. Texas*, 131 S. Ct. 1651, 1657-58 (2011) (explaining that "federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks omitted).

"[T]he State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment." *Collette v. Vermont*, 2010 WL 186173, at *2 (D. Vt. Jan. 13, 2010); *see also* 12 V.S.A. § 5601(g) ("Nothing in this chapter waives the rights of the

13

State under the Eleventh Amendment of the United States Constitution."). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Stewart*, 131 S. Ct. at 1638.

Because Plaintiff has failed to allege any exception to Eleventh Amendment immunity for his claims against VHA and VHC, those defendants are entitled to dismissal of the claims against them. *See Madden v. Vt. Sup. Ct.*, 236 F. App'x 717, 718 (2d Cir. 2007) ("The Eleventh Amendment precludes [a plaintiff] from bringing suit against the state or state agencies, because it deprives the federal courts of subject matter jurisdiction over any action asserted by an individual against a state regardless of the nature of the relief sought."). The State Defendants' motion to dismiss all claims against VHA and VHC is therefore GRANTED and VHA and VHC are hereby DISMISSED from this lawsuit.

### D.     Federal Defendants' Motion to Dismiss Plaintiff's RFRA Claim.

In Count One of his Verified Complaint, Plaintiff alleges that the Federal Defendants[8] have violated RFRA because they "interpret and apply the Affordable Care Act to require Plaintiff to pay a separate fee specifically for others' abortions in violation of his religious beliefs" and "withhold from Plaintiff valuable government benefits to which [he is] entitled because Plaintiff refuses to pay a separate fee to be used exclusively for others' abortions in violation of Plaintiff's religious beliefs." (Doc. 1 at 17-18, ¶¶ 73-74.) Plaintiff further avers that "[b]y enacting and threatening to enforce

---

[8] To the extent Plaintiff asserts a RFRA claim against any of the State Defendants, it is DISMISSED. *See City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (concluding that "RFRA contradicts vital principles necessary to maintain separation of powers and the federal balance" and thus does not apply to the states); *Sutton v. Rasheed*, 323 F.3d 236, 244 n.12 (3d Cir. 2003), *as amended* (May 29, 2003) (ruling that under *City of Boerne*, RFRA is unconstitutional as applied "to the states and hence to state officials" and "exceeds congressional power"); *Gambino v. Payne*, 2013 WL 6092506, at *5 n.7 (W.D.N.Y. Nov. 18, 2013) ("In 2000, RFRA was amended to delete all references to state and local governments."); *Ashby v. Arnone*, 2013 WL 1798905, at *2 (D. Conn. Apr. 26, 2013) (ruling that RFRA is "unconstitutional as applied to state and local governments" and that because "[t]he defendants are all state employees . . . any RFRA claim is dismissed[.]").

14

this mandate against Plaintiff, the Federal Defendants have violated RFRA." *Id.* at 18, ¶ 78.

Plaintiff neither challenges the constitutionality of the ACA nor explains how the Federal Defendants can be credited for "enacting" it. The Supreme Court has instructed that "courts must look to the underlying policies or legislative intent in order to draw a manageable line between those causal changes that may make an actor responsible for an effect and those that do not." *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 774 n.7 (1983). Although the Federal Defendants have certain duties and responsibilities under the ACA, they are not responsible for its enactment.

Plaintiff also does not allege that the Federal Defendants' interpretation of the ACA is erroneous or otherwise inconsistent with the plain language of the ACA itself. As a result, Plaintiff's conclusory allegation that RFRA is violated based on the Federal Defendants' "interpretation" of the ACA does not give rise to a plausible claim for relief. *See Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007) (ruling that "although less is required to survive a motion to dismiss than a motion for summary judgment, [precedent] makes clear that a bald allegation of standing is not enough to survive even a motion to dismiss where neither the factual allegations nor their logic establish redressability"). The court therefore confines its analysis to Plaintiff's RFRA claim that the Federal Defendants' enforcement of the ACA imposes a substantial burden on Plaintiff's free exercise of his religion.

"Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014). Under RFRA, the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability[,]" unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). "[A] substantial burden exists where the [government] put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Newdow v. Peterson*, 753

F.3d 105, 109 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1008 (2015) (internal quotation marks omitted).

For purposes of RFRA, "a law that 'operates so as to make the practice of . . . religious beliefs more expensive' in the context of business activities imposes a burden on the exercise of religion." *Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2770 (citation omitted). "[I]f there are other, reasonable ways to achieve [the government's] goals with a lesser burden on constitutionally protected activity, [the government] may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.'" *Johnson v. City of Cincinnati*, 310 F.3d 484, 503 (6th Cir. 2002) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 343 (1971)). "The least-restrictive-means standard is exceptionally demanding[.]" *Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2780.

In analyzing Plaintiff's ACA enforcement claims, the court is not bound by conclusory allegations regarding the impact of a statutory or regulatory scheme:

> While the Supreme Court reinforced in *Hobby Lobby* that we should defer to the reasonableness of the appellees' religious beliefs, this does not bar our objective evaluation of the nature of the claimed burden and the substantiality of that burden on the appellees' religious exercise. This involves an assessment of how the regulatory measure actually works. Indeed, how else are we to decide whether the appellees' religious exercise is substantially burdened? "[T]here is nothing about RFRA or First Amendment jurisprudence that requires the Court to accept [the appellees'] characterization of the regulatory scheme on its face." We may consider the nature of the action required of the appellees, the connection between that action and the appellees' beliefs, and the extent to which that action interferes with or otherwise affects the appellees' exercise of religion—all without delving into the appellees' beliefs.

*Geneva Coll. v. Sec. of Health & Human Servs.*, 778 F.3d 422, 436 (3d Cir. 2015) (citation omitted) (holding plaintiffs failed to establish that compliance with religious employer "accommodation" provision of ACA's contraceptive mandate imposed substantial burden on their free exercise of religion). The court must therefore determine if the ACA actually impacts Plaintiff's free exercise of religion before it can consider Plaintiff's proposed RFRA accommodations.

As a threshold issue, the Federal Defendants assert that they are entitled to dismissal of Count I because Plaintiff lacks standing to assert a RFRA claim based upon the independent choices of third parties not before the court. "Article III of the Constitution limits federal courts' jurisdiction to certain Cases and Controversies. . . . One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (internal quotation marks and citation omitted). The Supreme Court has held that the "irreducible constitutional minimum of standing" requires that "the plaintiff must have suffered an 'injury in fact[,]'" "there must be a causal connection between the injury and the conduct complained of[,]" and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

When "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts[,] . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* at 562 (internal quotation marks omitted). In other words, where the actions of a third party are at issue, even for pleading purposes, "bald allegation[s]" are not enough; instead, a plaintiff must allege facts "sufficient to demonstrate a substantial likelihood that the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n*, 489 F.3d at 1275; *see also Lujan*, 504 U.S. at 561 (noting that the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case").

The Federal Defendants argue that they cannot be deemed to have imposed any burden, much less a substantial burden, on Plaintiff's religious beliefs because any such burden arises out of the decisions of third party health insurers to: (1) participate in VHC, which is Vermont's sole Exchange; (2) offer coverage for NFF abortion services, which they are lawfully entitled to offer; (3) comply with the ACA's separate payment and

17

segregation requirements, which, in turn, are required by the Hyde Amendment; and (4) offer a multi-state QHP that does not provide coverage for NFF abortion services.[9]  It is undisputed that these third party health insurers are not subject to liability under RFRA. *See Annex Med., Inc. v. Burwell*, 769 F.3d 578, 582 (8th Cir. 2014) ("Whether for political, moral, religious, administrative, or purely profit-driven reasons, health insurance issuers are free under RFRA to decline [a plaintiff's] business.").  The critical inquiry is thus whether the Federal Defendants are nonetheless "*responsible* for the specific conduct of which the plaintiff complains" such that "the court can [en]sure that RFRA's heightened standard is only applied when it can be said that the federal government is responsible for the burden on religious exercise."  *Vill. of Bensenville v. FAA*, 457 F.3d 52, 62-63 (D.C. Cir. 2006) (internal citations omitted).

In this case, the Verified Complaint contains no facts indicating that the Federal Defendants have directed, participated in, or encouraged the third party health insurers' decisions to offer coverage for NFF abortion services.  Bare assertions that the Federal Defendants are somehow responsible will not suffice.  *See id.* at 64, 66 (holding "absent government coercion or significant government encouragement . . . the federal government may not be held responsible for a measure taken by a private actor" and extending RFRA to federal agencies on this basis is not justified).  Similarly, Plaintiff alleges no facts that would support a conclusion that third party health insurers would cease inflicting the alleged harm on Plaintiff's religious beliefs if Plaintiff's requests for declaratory and injunctive relief were granted.

---

[9] Although Plaintiff is correct that the Director of OPM is required to contract for a multi-state plan on each state Exchange by 2017, 42 U.S.C. § 18054(a)(1), he does not further establish that this defendant has the present ability to *compel* a third party health insurer to provide such a plan in Vermont *now*. *See* Patient Protection and Affordable Care Act; Establishment of the Multi-State Plan Program for the Affordable Insurance Exchanges, 79 Fed. Reg. 69,802-01 (proposed Nov. 24, 2014) (to be codified at 45 C.F.R. pt. 800) ("[The ACA] contemplates interest from private health insurance issuers in participating in the [MSP] Program; however, there is no requirement for health insurance issuers to participate in the Program.").  For those health insurers who decide to participate in the MSP Program, the ACA provides for a "[p]hase in" whereby health insurers that choose to offer an MSP option may do so over time and thereby gradually increase the states served by such plans. *See* 42 U.S.C. § 18054(a), (e).

Plaintiff's reliance on the ACA's separate payment and segregation requirements for his RFRA claims also targets third party actions. The ACA's separate payment requirement is directed not to Plaintiff, as a policyholder, but to third party health insurers who collect premiums and who must then, consistent with the Hyde Amendment, segregate a portion of them in an allocation account to pay for NFF abortion services. *See* 42 U.S.C. § 18023(b)(2)(B)(i). Relieving Plaintiff of an obligation to make a separate payment (which is not imposed on him by the ACA) will thus have no bearing on whether a third party health insurer segregates a portion of Plaintiff's remaining premium for NFF abortion services. Plaintiff does not dispute that the ACA's separate payment and segregation requirements are *consistent* with his religious beliefs. The ACA therefore "already takes into account beliefs like those of [the plaintiff] and *accommodates* them." *Geneva Coll.*, 778 F.3d at 441. "The accommodation in this case consists in the [federal government] . . . washing its hands of any involvement in [NFF abortion services coverage], and the insurer . . . taking up the slack [consistent with the restrictions] of federal law." *Id.* (citation omitted).

The vast majority of Plaintiff's RFRA claims therefore arise out of the decisions of third parties, not the regulatory scheme set forth in the ACA. "[T]he case law clearly draws a distinction between what the law may impose on a person over religious objections, and what it permits or requires a third party to do." *Id.* "RFRA does not grant [Plaintiff] a religious veto against plan providers' compliance with [federal] regulations, nor the right to enlist the government to effectuate such a religious veto against legally required conduct of third parties." *Id.* at 439 (quoting *Priests for Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 251 (D.C. Cir. 2014)). Plaintiff is thus not entitled to declaratory or injunctive relief that would compel the Federal Defendants to *attempt to compel* third party health insurers to alter their practices because RFRA does not permit Plaintiff "to impose a restraint on another's action based on the claim that the action is religiously abhorrent." *Id.* at 441.

To the extent Plaintiff asserts a RFRA claim based upon third party health insurers' decision to offer coverage for NFF abortion services; to collect a separate

19

payment for this coverage; and to segregate it in their allocation accounts, Plaintiff's RFRA claims are hereby DISMISSED for lack of standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) (observing that in a standing analysis, "the proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct. That is ordinarily the case if the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts") (internal quotation marks omitted).

Plaintiff's remaining RFRA claims are based on regulatory decisions for which the Federal Defendants may plausibly be deemed responsible. Plaintiff alleges that the Federal Defendants are empowered to enforce the individual mandate which, in turn, places a substantial burden on his religious beliefs because, in Vermont, it forces him to obtain health insurance coverage that includes NFF abortion services. By exempting Plaintiff from the individual mandate, the Federal Defendants may alleviate at least some of Plaintiff's harm. Under RFRA, the absence of a specific exemption under the ACA directed to Plaintiff's religious beliefs is not dispositive. *See Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2781 (noting that under RFRA, the government may be required to create entirely new programs and modify existing ones in order to accommodate genuinely held religious beliefs); *see also id.* at 2787 (Ginsburg, J., dissenting) ("In a decision of startling breadth, the Court holds that [a person] can opt out of any law (saving only tax laws) they judge incompatible with their sincerely held religious beliefs.").

Plaintiff, however, has not applied for an exemption from the individual mandate which is a condition precedent to his obtaining one. *See* 45 C.F.R. § 155.605(b) (empowering administrators of a state exchange to "provide a certificate of exemption only for the calendar year in which an applicant submitted an application for such exemption."). In his Verified Complaint, Plaintiff asserts under oath that he "does not qualify for any exemption from the mandate," (Doc. 1 at 12, ¶ 45), he concedes that an exemption would not provide him with the health insurance he seeks, (Doc. 1 at 16, ¶ 64), and he does not request an exemption in his prayer for relief. (Doc. 1 at 23.) He thus cannot complain that the Federal Defendants' enforcement of the individual mandate

20

and the tax penalty are presently burdening his religious beliefs because they clearly are not. To the contrary, it is undisputed that the Federal Defendants have taken no enforcement action against Plaintiff.[10]

Moreover, the Federal Defendants do not foreclose the possibility of Plaintiff obtaining an exemption from the individual mandate should he apply for one. *See* Doc. 43 at 11 (observing that no tax penalty will accumulate if "Plaintiff can avail himself of an exemption under Section 5000A."). As a result, the court is left to guess at both whether Plaintiff intends to apply for an exemption and whether one will be granted. Plaintiff's RFRA claims based upon the Federal Defendants' enforcement of the individual mandate and the tax penalty are thus not ripe for adjudication. *See Connecticut v. Duncan*, 612 F.3d 107, 114 (2d Cir. 2010) ("Prudential ripeness is . . . a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial.") (internal quotation marks omitted); *see also N.J. Physicians, Inc. v. Obama*, 653 F.3d 234, 239 (3d Cir. 2011) (concluding that, where complaint was silent as to whether plaintiff was entitled to an exemption from individual mandate, allegations did not establish an "imminent" injury that is "concrete and particularized"); *Scheibe v. Nat'l Bd. of Med. Exam'rs*, 424 F. Supp. 2d 1140, 1145 (W.D. Wis. 2006) (finding the "plaintiff is not in immediate danger of sustaining a direct injury" because "he has not registered with a state medical board or the federation to sit for [a test] and he has not presented any evidence showing that he intends to do so").

---

[10] In the absence of an enforcement action, courts that have found an imminent harm posed by the ACA have done so based on evidence that a plaintiff "must make preparations to obtain insurance before the mandate goes into effect." *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 90 (4th Cir. 2013); *cf. Butler v. Obama*, 814 F. Supp. 2d 230, 234 (E.D.N.Y. 2011) ("In short, it is clear that far from being imminent, any injury to plaintiff from the individual mandate in 2014 is speculative."). Plaintiff's Verified Complaint is bereft of any allegation that he will need to make financial preparations now in order to comply with the individual mandate and pay the tax penalty in 2016.

Plaintiff fares no better with his contention that, as an accommodation under RFRA, the Federal Defendants should be directed to pay for Plaintiff's healthcare expenses or to pay directly to Plaintiff the state and federal subsidies for which he qualifies so that he can use that money to defray his healthcare costs.[11]  Plaintiff points to no authority that would authorize payment directly to him as a religious accommodation, nor does he explain how such payments would eliminate a substantial burden on his religious beliefs.  Were the court to order such payments, Plaintiff would remain without health insurance and would be deprived of a governmental benefit intended to pay for it. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2580, 2670 (2012) (noting that the ACA "aims to increase the number of Americans covered by health insurance and decrease the cost of health care" and the purpose of subsidies under the ACA is to aid individuals in "their purchase of insurance . . . available on health-insurance exchanges").

Plaintiff's reliance on *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981) for a contrary proposition is misplaced. There, the Supreme Court held:

> [w]here the [government] conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Id.* at 717-18.

---

[11] In his Verified Complaint, Plaintiff does not seek an award of damages.  If Plaintiff now seeks monetary relief, it would generally negate the availability of injunctive relief.  *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.") (internal quotation marks omitted); *see also Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) ("It is well established that an irreparable injury is an injury . . . for which a monetary award cannot be adequate compensation.") (internal quotation marks omitted); *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113-14 (2d Cir. 2003) ("[O]nly harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.").  The court nonetheless acknowledges the Supreme Court's observation in *Hobby Lobby Stores, Inc.* that "both RFRA and its sister statute, RLUIPA, may in some circumstances require the Government to expend additional funds to accommodate citizens' religious beliefs." 134 S. Ct. at 2781.

Here, in contrast, the Federal Defendants are not conditioning the availability of subsidies under the ACA on Plaintiff's willingness to forego his religious beliefs; they are offering those subsidies regardless of Plaintiff's religious beliefs. If a third party health insurer offers a health insurance plan that does not cover NFF abortion services, Plaintiff presumably will seek to use the subsidies to offset the cost of that insurance. If a third party health insurer declines to offer Plaintiff that option, a direct monetary payment to Plaintiff may provide modest assistance in paying for his healthcare needs, but it will have no impact on whether he is free to practice his religion. It is therefore the decision of third party insurers to provide coverage for NFF abortion services, not the availability of subsidies, that imposes a burden on Plaintiff's religious beliefs. A direct monetary payment to Plaintiff will thus fail to redress Plaintiff's alleged harm. *See E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) ("A plaintiff need not demonstrate with certainty that her injury will be cured by a favorable decision, but she must at least make a showing that there is a 'substantial likelihood that the relief requested will redress the injury claimed.'") (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)). Plaintiff's request for declaratory and injunctive relief seeking a direct payment to him of federal and state subsidies therefore fails to state a plausible claim for relief and must be DISMISSED. *See* Fed. R. Civ. P. 12(b)(6).

More persuasively, Plaintiff argues that the Federal Defendants may alleviate a burden on Plaintiff's religious beliefs by refraining from enforcement actions against a third party insurer who agrees not to adhere to the segregation requirement for health insurance offered to Plaintiff. Although this relief requires the cooperation of a third party, Plaintiff need not establish that an accommodation will fully redress his harm in order to be entitled to it. As the Eighth Circuit recently observed in conjunction with a RFRA claim:

> An injury may be "fairly traceable" to a defendant for causation purposes even when that defendant's actions are not "the very last step in the chain of causation." "While . . . it does not suffice if the injury complained of is 'th[e] result [of] the *independent* action of some third party not before the

23

court,' that does not exclude injury produced by determinative or coercive
effect upon the action of someone else."

*Wieland v. U.S. Dep'y of Health & Human Servs.*, 2015 WL 4393572, at \*3 (8th Cir. July
20, 2015) (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).[12]  In this case,
Plaintiff argues that non-enforcement of the segregation requirement renders it more
likely a third party health insurer will offer Plaintiff the health insurance he desires. A
RFRA claim may plausibly be brought on this basis. *See Wieland*, 2015 WL 4393572, at
\*6 (noting that redressability is satisfied because it is "more than merely speculative" that
an insurance company that is "assured that it could safely proceed" to provide the
coverage the claimant desires without an enforcement action, will in fact provide it).

The Federal Defendants have already agreed not to enforce the segregation
requirement against any third party health insurer willing to offer Plaintiff health
insurance coverage. Notwithstanding that agreement, because the Federal Defendants
have not offered this as an accommodation under RFRA on a permanent basis, Plaintiff
retains standing to request it in the form of declaratory relief. *See Pittsburgh Mack Sales
& Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 190
(3d Cir. 2009) ("Though a plaintiff need not suffer a *completed* harm to establish
adversity of interest between the parties, to protect against a feared future event, the
plaintiff must demonstrate that the probability of that future event occurring is real and
substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory
judgment.") (internal quotation marks omitted); *Emp'rs Ins. of Wausau v. Fox Entm't
Grp., Inc.*, 522 F.3d 271, 278 (2d Cir. 2008) ("That the liability may be contingent does
not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should
focus on the practical likelihood that the contingencies will occur[ ].") (quoting *E.R.
Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001)).

The Federal Defendants argue that the court should nonetheless dismiss Plaintiff's
RFRA claim in its entirety because they can establish that any burden on Plaintiff's

---

[12] *See also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d
Cir. 2013) (observing that "[t]he injury-in-fact necessary for standing need not be large[;] an
identifiable trifle will suffice.") (quoting *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002)).

religious beliefs is supported by a compelling governmental interest in providing universal health insurance while complying with the Hyde Amendment. They further argue that they have chosen the least restrictive means of furthering that interest. However, in order to state a plausible claim for relief, Plaintiff need not disprove the Federal Defendants' claims with regard to which they bear the burden of proof. *See Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, 2012 WL 3599368, at *5 (D. N.J. Aug. 17, 2012) (ruling "the plaintiff need not disprove defense theories at the motion to dismiss stage."). Instead, Plaintiff need only plausibly allege that the Federal Defendants' enforcement of certain provisions of the ACA imposes substantial burdens on his religious beliefs and that non-enforcement of those same provisions will afford Plaintiff some measure of relief. Plaintiff's request for a declaratory judgment that he is entitled to non-enforcement of the segregation requirement (and the separate payment) is therefore sufficiently plausible to avoid dismissal at this stage in the proceedings. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits.").

For the reasons stated, the court GRANTS IN PART and DENIES IN PART the Federal Defendants' motion to dismiss Plaintiff's RFRA claims. Plaintiff's RFRA claims as set forth in Count I are DISMISSED except for his request for a declaratory judgment that he is entitled to a religious accommodation under RFRA that will permit any health insurer from whom he obtains health insurance coverage to refrain from collecting a separate payment from him and complying with the segregation requirement under the ACA. Such relief will assist in ensuring that Plaintiff will not pay for NFF abortion services in contravention to his genuinely held religious beliefs.

### E.    Whether Plaintiff is Entitled to a Preliminary Injunction with Regard to his Remaining RFRA Claim.

In order to obtain preliminary injunctive relief with regard to his remaining RFRA claim, Plaintiff must establish that he will suffer irreparable harm before trial that is

25

imminent, non-contingent, and non-speculative. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative."); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1998), *as amended* (Mar. 23, 1999) ("For purposes of preliminary injunctions, . . . the harm must be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm."). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

In this case, a preliminary injunction is not necessary in light of the Federal Defendants' agreement to refrain from enforcement of the segregation requirement (and thus the separate payment) for any insurer willing to offer Plaintiff health insurance coverage until health insurance without coverage for NFF abortion services becomes available. *See Pan Am. World Airways, Inc. v. Flight 001, Inc.*, 2007 WL 2040588, at *6 (S.D.N.Y. July 13, 2007) ("Some district courts in the Second Circuit have held that defendant's voluntary cessation of activity affords no reason for denying a preliminary injunction. But I conclude that such a rule is at odds with the nature of a preliminary injunction, which is an extraordinary equitable remedy[.]") (internal citation and quotation marks omitted); *see also Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 2011 WL 2811317, at *2-3 (D. Vt. July 18, 2011) (noting a court may "decline[] to order short-term drastic and extraordinary injunctive relief" that would "have no operative effect on state actions before trial" and observing that a court is "in a better position to tailor injunctive relief, if it is warranted, as part of a final determination of the merits"). In the event the Federal Defendants withdraw this concession or refuse to make it permanent, nothing prevents Plaintiff from renewing his motion.

Plaintiff's motion for a preliminary injunction with regard to his remaining RFRA claim is therefore DENIED WITHOUT PREJUDICE.

### F.    Plaintiff's Claims Against Commissioner Constantino.

In Counts III and IV of his Verified Complaint, Plaintiff seeks declaratory and injunctive relief against Commissioner Constantino arising out of his alleged violations of Plaintiff's rights under the Free Exercise and Free Speech clauses of the First Amendment to the U.S. Constitution.  Because Commissioner Constantino is sued only in his official capacity, Plaintiff must establish that his claims fall within a narrow exception to the Eleventh Amendment, commonly referred to as the *Ex parte Young* doctrine.

"The landmark case of *Ex parte Young* . . . created an exception to th[e] general principle [of sovereign immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green*, 474 U.S. at 68.  "*Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Id.*  The courts have not interpreted the *Ex parte Young* doctrine expansively. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("Courts have not read *Young* expansively."); *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd*, 448 F. App'x 79 (2d Cir. 2011) (same).

To ensure that Plaintiff's request for injunctive relief is not actually a claim against a state in the guise of a claim against a state official, the court must examine Commissioner Constantino's connection to the federal law. *See Ex parte Young*, 209 U.S. 123, 157 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").  "For a state officer to be a proper party, both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty are needed." *Kelly v. N.Y. State Civil Serv. Comm'n*, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015).

Plaintiff alleges that Commissioner Constantino, as the state official in charge of VHA and VHC, is empowered under the ACA to engage in certain acts that may affect

27

Plaintiff's First Amendment freedoms.[13]  The ACA and Vermont law support this assertion.[14]  *See Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) ("A defendant need not be identified in the challenged statute itself to fit within the *Ex parte Young* exception.  Connection to the enforcement of an act may come by way of another state law, an administrative delegation, or a demonstrated practice of enforcing a provision.") (citation omitted).  Plaintiff thus plausibly alleges that Commissioner Constantino has "some connection with the enforcement of the act that is [allegedly] in . . . violation of federal law."  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005).  Plaintiff further plausibly alleges that that Commissioner Constantino has "demonstrated a willingness to enforce" his duties under the ACA.  *See Kelly*, 2015 WL 861744, at *3.

At the pleading stage, Plaintiff has adduced sufficient facts to plausibly allege that the *Ex parte Young* doctrine may apply to his federal constitutional claims against Commissioner Constantino and that Plaintiff may be entitled to injunctive and declaratory relief against this defendant arising out of his alleged ongoing or threatened violation of federal law.  *See Springfield Hosp. v. Hoffman*, 2010 WL 3322716, at *6 (D.

---

[13] Contrary to the State Defendants' contention, Plaintiff alleges that Commissioner Constantino's responsibilities extend beyond the mere provision of information to the Internal Revenue Service regarding the name and tax identification number (or date of birth) of every individual covered by a QHP on VHC.  *See, e.g.*, Doc. 1 at 5, ¶ 16 (Commissioner Constantino "is the Commissioner of the Department of Vermont Health Access.  He is responsible for all aspects of the administration of Vermont Health Access and Vermont Health Connect."); *id.* at 5, ¶ 14 ("Defendant Vermont Health Connect is the Vermont state healthcare exchange created pursuant to the Affordable Care Act.  Pursuant to the Affordable Care Act and state law[,] Vermont Health Connect is responsible for making available qualified health plans to Vermont residents and certifying the individuals who are exempt from the requirements of the individual mandate."); *id.* at 5, ¶ 15 ("Defendant Department of Vermont Health Access is part of the Vermont Agency of Human Services.  Vermont Health Access is responsible for the administration of Vermont Health Connect including, *inter alia*, making available qualified health plans to Vermont residents and certifying the individuals who are exempt from the requirements of the individual mandate pursuant to the Affordable Care Act.").

[14] *See* 26 U.S.C. § 5000A(e); 42 U.S.C. §§ 18031(b), (d)(4)(H) (requiring a state Exchange to determine and certify exemptions from the individual mandate); 33 V.S.A. § 1805(8)(A) (authorizing VHC to "grant[] a certification attesting that an individual is exempt from the individual responsibility requirement or from the penalty for violating that requirement").

Vt. Apr. 9, 2010), *aff'd*, 488 F. App'x 534 (2d Cir. 2012).  The State Defendants' motion
to dismiss all claims against Commissioner Constantino on the basis of sovereign
immunity is thus DENIED.

The court cannot, however, further find that Plaintiff has established a likelihood
of success on the merits of his declaratory judgment and injunctive relief claims against
Commissioner Constantino at trial.  As the Supreme Court instructs, the "extraordinary
and drastic remedy" of a preliminary injunction "should not be granted unless the
movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*,
520 U.S. 968, 972 (1997).  Here, Plaintiff seeks preliminary injunctive relief with regard
to the separate payment, the segregation requirement, the tax penalty, and state and
federal subsidies.  Plaintiff, however, does not adequately explain how Commissioner
Constantino is responsible for enforcing these components of the ACA or how an
injunction directed to this state official will relieve a substantial burden on Plaintiff's
religious beliefs.  *See Brisco v. Rice*, 2012 WL 253874, at *4 (E.D.N.Y. Jan. 27, 2012)
(holding that to obtain injunctive relief against a state official, "[t]he individual sued must
have a direct connection to, or responsibility for, the alleged illegal action") (quotation
marks omitted).  Indeed, Plaintiff alleges that the Federal Defendants are responsible for
enforcing these same aspects of the ACA.  *See Peterson*, 707 F.3d at 1207 (observing that
"when a state [or federal] law explicitly empowers one set of officials to enforce its
terms, a plaintiff cannot sue a different official absent some evidence that the defendant is
connected to the enforcement of the challenged law.").

Although Commissioner Constantino is empowered to grant exemptions from the
individual mandate under the ACA, he can "provide a certificate of exemption only for
the calendar year in which an applicant submitted an application for such exemption."  45
C.F.R. § 155.605(b).  As Plaintiff has not applied for an exemption from the individual
mandate and claims under oath that he is not entitled to one, an exemption to the
individual mandate is unavailable as injunctive relief.  *See Annex Med.*, 769 F.3d at 582
(vacating preliminary injunction and remanding the case for further analysis where "it is
unclear whether [plaintiff's] alleged injury is caused by the government defendants and

redressable by the federal courts."). The court nonetheless proceeds to consider the merits of Plaintiff's Free Exercise and Free Speech claims against Commissioner Constantino as dismissal of those claims renders any request for injunctive relief moot. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("Standing is 'the threshold question in every federal case.' Once this threshold is crossed, a plaintiff must still establish the elements of its causes of action to proceed with its case.") (citation omitted).

### G. Whether Plaintiff's Free Exercise Claims Should be Dismissed.

In Count III, Plaintiff asserts that both the Federal Defendants and Commissioner Constantino have violated his right to the free exercise of his religious beliefs under the First Amendment to the U.S. Constitution. He bases these violations on Defendants' alleged "interpret[ation] and appl[ication]" of the ACA "to require Plaintiff to pay for others' abortions in violation of his religious beliefs;" "to withhold from Plaintiff valuable government benefits to which [he is] entitled because Plaintiff refuse[s] to pay a separate fee to be used exclusively for others' abortions in violation of Plaintiff['s] religious beliefs;" and "to prevent disclosure to Plaintiff of the fact that with his insurance premium he was compelled to pay a sum to be used solely to pay for others' elective abortions in violation of his religious beliefs." (Doc. 1 at 20, ¶¶ 95-97.)

The Verified Complaint contains no specific allegations explaining how Commissioner Constantino has violated Plaintiff's Free Exercise rights. In his reply brief, Plaintiff nonetheless argues that Commissioner Constantino is a "proper party" because he approves health insurance plans for VHC and administers Vermont Premium Assistance, a state subsidy administered by VHC. The court generally does not address arguments raised for the first time in a reply brief. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."). Were the court to consider this claim, it would not give rise to a Free Exercise violation because the Vermont laws with which Commissioner Constantino is connected are neutral laws of general applicability. For similar reasons, Plaintiff has failed to plausibly

allege that the Federal Defendants have violated his Free Exercise rights through their enforcement of the ACA.

"The Free Exercise Clause of the First Amendment, applied against the states by incorporation into the Fourteenth Amendment provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (citation omitted) (quoting U.S. Const. amend. I). "Thus, the First Amendment prohibits all governmental regulation of religious beliefs as such." *Id.* (internal quotation marks omitted). Where the government does not directly regulate religious beliefs, a plaintiff must establish a "substantial burden" on his religious beliefs which "exists where [the federal government or] the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Newdow*, 753 F.3d at 109 (citation omitted).

In evaluating whether a particular practice burdens a plaintiff's free exercise of his religion, the court "begins by identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (internal quotation marks omitted). The conduct must be "fairly attributable" to the government because "[a]bsent government coercion or significant government encouragement of the measure under inspection[,]" "the federal government may not be held responsible for a measure taken by a private actor." *Vill. of Bensenville*, 457 F.3d at 64 (internal quotation marks omitted). The court has previously concluded that the majority of Plaintiff's complaints are directed at the decisions of third party health insurers who have decided to offer coverage for NFF abortion services in every health insurance plan offered in Vermont. Plaintiff has failed to make any plausible claim that the Federal Defendants are responsible for those decisions. This applies with equal force to Commissioner Constantino. *See Genas v. N.Y. Dep't of Corr. Servs.*, 75 F.3d 825, 831 (2d Cir. 1996) ("To prevail on his Free Exercise claim, [Plaintiff] must first show that a state action sufficiently burdened his exercise of religion.").

31

Assuming *arguendo* that Plaintiff could make the requisite showing of state and federal involvement, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted). *Smith* thus draws a distinction between neutral, generally applicable laws, and those that "regulate religious beliefs, the communication of religious beliefs, or the raising of one's children in those beliefs." *Smith*, 494 U.S. at 882. "[U]nder the First Amendment, 'neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest.'" *Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2761 (quoting *City of Boerne*, 521 U.S. at 514).

In response to a claim that the ACA's individual mandate and employer mandate violate the First Amendment, the Fourth Circuit held that:

> A neutral law of general applicability . . . does not violate the Free Exercise Clause. The [ACA] is just such a law. It has no object that 'infringe[s] upon or restrict[s] practices *because of* their religious motivation,' and imposes no 'burden[ ] *only* on conduct motivated by religious belief' . . . the Act does not set apart any particular religious group. The Act therefore does not violate the Free Exercise Clause.

*Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 100 (4th Cir. 2013), *cert. denied sub nom. Liberty Univ. v. Lew*, 134 S. Ct. 683 (2013) (citation omitted). This conclusion is consistent with Second Circuit precedent which holds that "the critical distinction" is "between a neutral, generally applicable law that happens to bear on religiously motivated action" and a law "that restricts certain conduct because it is religiously oriented." *St. Bartholomew's Church v. City of New York*, 914 F.2d 348, 354 (2d Cir. 1990); *see also Universal Church v. Geltzer*, 463 F.3d 218, 227 (2d Cir. 2006) ("It is well established that a generally applicable law that does not target religious practices does not violate the Free Exercise clause.").[15]

---

[15] Although Plaintiff argues that the ACA cannot be considered "neutral," because it authorizes an exemption for certain religious beliefs but not others, he lacks standing to assert this claim. Plaintiff does not allege that he sought an exemption from the individual mandate to

Because the ACA is a neutral and generally applicable law that does not target Plaintiff's religious beliefs, Plaintiff fails to plausibly allege that the ACA violates the Free Exercise clause of the First Amendment.  For similar reasons, Vermont law implementing the ACA is also "a neutral, generally applicable law."[16]  It may have an impact on Plaintiff's religious beliefs, but it does not restrict Plaintiff's "conduct because it is religiously oriented." *St. Bartholomew's Church*, 914 F.2d at 354.

Because the ACA and Vermont law merely "happen[] to bear on religiously motivated action," *id.*, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff has failed to plausibly allege a violation of his rights under the Free Exercise clause of the First Amendment.  Count III is therefore DISMISSED.

### H.   Whether Plaintiff's Free Speech Claim Should be Dismissed.

In Count IV, Plaintiff alleges Defendants violated his right to receive information under the First Amendment to the U.S. Constitution by "expressly forbid[ing] plan issuers or health insurance exchanges from advertising whether plans include abortion or informing prospective enrollees or enrollees of this important information prior to actual enrollment in the plan" and by "forbid[ding] any issuer from informing enrollees how much of their monthly payment is allocated to a separate abortion premium and used exclusively to pay for others' abortions." (Doc. 1 at 22, ¶ 108.)  Plaintiff identifies a federal regulation, 45 C.F.R. § 156.280(f), as the source of his Free Speech claim.  That regulation provides in relevant part that information regarding NFF abortion services shall be provided at the time of enrollment "only as part of the summary of benefits and

---

accommodate his religious beliefs and was denied one.  He therefore fails to allege an injury arising out of the ACA's recognition of certain religious beliefs and not others.  He gains no further traction with a claim that a law cannot be neutral and generally applicable if other states' Exchanges offer health insurance without coverage for NFF abortion services.  The availability of such plans is attributable to decisions made by the third party health insurers who make such plans available.  It is not because the ACA is applied differently in those states in order to accommodate certain religious beliefs.

[16] *See, e.g.*, 33 V.S.A. § 1811(b) (identifying requirements for health benefit plans for individuals and small employers); 33 V.S.A. § 1806 (setting forth requirements for QHPs); 33 V.S.A. § 1812 (identifying qualifications for and availability for state assistance for health insurance premiums).

coverage explanation" and "must provide information only with respect to the total amount of combined payments for [NFF abortion] services . . . and other services covered by the QHP." 45 C.F.R. § 156.280(f)(1), (2).

The State Defendants have proffered evidence that Plaintiff is not prohibited from seeking and obtaining additional information regarding NFF abortion services in Vermont health insurance plans. *See* Doc. 29 at 21-22; Doc. 29-4 at 2-3, ¶¶ 5-7; Doc. 29-7 at 1-2, ¶¶ 2-4. For purposes of analyzing the court's subject matter jurisdiction, this evidence may be considered. *See Lakhani*, 2013 WL 3829624, at \*2 ("In reviewing subject matter jurisdiction, the Court may look to matters beyond the pleadings.").

Defendants seek dismissal of Plaintiff's Free Speech claim, noting that Plaintiff does not allege that his own speech was restricted, but rather asserts that third parties seek to engage in additional speech regarding NFF abortion services, but are precluded by federal regulation from doing so. "While it is well-established that the First Amendment protects not only the right to engage in protected speech, but also the right to receive such speech . . . it remains true that the rights of the recipients of speech . . . derive in the first instance from the primary rights of the speaker." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83 (2d Cir. 2003). Plaintiff's Free Speech claim is therefore "entirely derivative" of third parties' freedom of expression. *Id.* at 83 & n.19 (observing that "there is substantial doubt as to whether plaintiffs have standing to seek equitable relief based on the speech of other [entities], and even if plaintiffs could demonstrate such standing, whether the controversy is sufficiently ripe for adjudication."). As a result, Plaintiff's standing to bring a Free Speech claim in this case depends on the existence of a willing speaker. *See Competitive Enter. Inst. v. U.S. Dept. of Transp.*, 856 F.2d 1563, 1566 (D.C. Cir. 1988) (noting that "[w]hether the injury is phrased as a deprivation of information that the listener would find useful or the interference with a relationship between speaker and listener, a government regulation cannot cause that injury unless [plaintiffs] identify a willing speaker").

As Plaintiff was able to obtain the information regarding NFF abortion services coverage he needed to make a purchasing decision, he fails to plausibly allege that

34

additional information is required by the First Amendment.  Assuming *arguendo* that Plaintiff could overcome this obstacle, Plaintiff's Verified Complaint is silent as to the identity of any third party that seeks to communicate information regarding NFF abortion services beyond the information authorized by federal regulation.  Plaintiff alleges only that "[o]n information and belief, at least some issuers and/or Vermont Health Connect employees would provide this information to enrollees . . . if they were permitted to do so."  (Doc. 1 at 22, ¶ 109.)  He, however, alleges no "factual information that makes the inference of [a willing speaker] plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Lakhani*, 2013 WL 3829624, at *2 (observing that "because jurisdiction must be shown affirmatively, courts do not draw inferences from the pleadings in favor of the petitioner").[17]

In the absence of a plausible allegation that there are "willing speakers" who seek to disseminate information about NFF abortion services that Plaintiff claims is necessary to fully inform himself and others, Plaintiff's Free Speech claim must be dismissed.  *See Bond v. Ultreras*, 585 F.3d 1061, 1078 (7th Cir. 2009) ("Every circuit to have considered the question of standing in the context of a right-to-receive claim has reached the same conclusion: 'in order to maintain a 'right to listen' claim, a plaintiff must clearly establish the existence of a 'willing speaker.'  In the absence of a willing speaker, an Article III court must dismiss the action for lack of standing.'") (citation omitted).  Count IV is therefore DISMISSED pursuant to Fed. R. Civ. 12(b)(1) and 12(b)(6).

---

[17] The instant case is distinguishable from *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 n.14 (1976), in which the parties stipulated that, in the absence of the regulatory restriction, "some pharmacies in Virginia would advertise, publish, and promote price information regarding prescription drugs."  Contrary to Plaintiff's contention, *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 607 (2d Cir. 1988), does not stand for the proposition that where there is an incentive to speak, the existence of a willing speaker may be presumed.  Instead, in that case, "[t]he district judge recognized that there had been extensive—pre-restraining order—extrajudicial statements by all these individuals [prosecutors, defense counsel, and the defendants in the underlying . . . case]" and thus, in the absence of a restraining order, "it is hard, in fact, to imagine that there [would be] no willing speaker.  Without them there would be no need for a restraining order; it would be superfluous."  *Id.*

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the Federal Defendants' motion to dismiss (Doc. 40); GRANTS the State Defendants' motion to dismiss (Doc. 39); and DENIES Plaintiff's motion for a preliminary injunction (Doc. 2). Plaintiff's claims against all Defendants are hereby DISMISSED with the exception of Plaintiff's RFRA claim against the Federal Defendants seeking declaratory relief regarding the Federal Defendants' enforcement of the separate payment and segregation requirement under the ACA.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 21st day of July, 2015.

Christina Reiss, Chief Judge
United States District Court